CORINNE KEEFE, an Infant, by L. M. LAYDEN, Her Guardian ad Litem, Plaintiff, *v.* ELLEN C. KEEFE, Individually and as Administratrix with the Will Annexed of DANIEL F. KEEFE, Deceased, and Others, Defendants.

Supreme Court, Warren County, July 25, 1929.

*L. M. Layden*, for the plaintiff.

*Chambers & Finn* [*Walter A. Chambers* of counsel], for the defendant Daniel Watkins.

*H. Prior King*, for the defendants George C. Keefe, Florence M. Keefe and Herbert Keefe.

*Frank Hurley*, for the defendants Ella C. Keefe, John J. Keefe and Josephine Keefe.

*J. B. McCormick*, for the defendants John McFadden and Elizabeth McFadden.

BREWSTER, J. Daniel F. Keefe died November 22, 1927, seized of certain real estate in the city of Glens Falls, N. Y., and leaving his last will and testament, dated March 29, 1924, which has been admitted to probate in the Surrogate's Court of Warren county, the substance of which provides as follows:

" I give, devise and bequeath to my good wife, Ellen C. Keefe, all my real and personal property of every kind, description and character, for her sole use and benefit during her life time. At or before my said wife's death, it is my wish that all that may remain of my estate of whatever kind may be equally distributed by my

said wife's Executor and given to George C. Keefe, Herbert Keefe, and John J. Keefe, my nephews.

" Likewise, I make, constitute and appoint my said wife, Ellen C. Keefe, to be executrix of this my Last Will and Testament, hereby revoking all former wills by me made."

This suit for the partition of the real estate whereof said decedent died seized is brought by one of his heirs at law against the others and other necessary parties, and brings in issue the validity of the aforesaid testamentary provisions.

Other pertinent facts delineating the controversy are that the testator's said wife, Ellen C. Keefe, predeceased him, she having died October 1, 1927, leaving her last will and testament, dated and executed November 9, 1916, and probated October 25, 1927, by which she gave her said husband all her estate, and appointed her namesake, a niece, executrix thereof.

It seems to me that, generally speaking, one of three results must be found in the construction of the testament in question, viz.: *First*, that the gift to the wife was absolute and in fee, in which case her death caused such a lapse as to render the will naught and a resulting intestacy. *Second*, that the provision for the wife was the gift of a life estate, with power of disposal over all the testator's property and a gift of the remainder over in fee to the three nephews named. *Third*, that the provision for the wife was the gift of a life estate in all the testator's property with or without a power of consumption, and, in addition, a power either general or special over the remainder, and in trust or not, depending upon whether the donor's reference to his three nephews comprehends merely his wish or states his will.

I am inclined and hold to the first stated view. The testator in express and unequivocal terms gave his entire estate to his wife " for her sole use and benefit." The peculiar expression that follows expressive of his wish as to the disposal of " all that may remain " *at or before* the death of his wife, it seems to me, plainly implies that the wife was given an absolute power of disposition. So far as it can reasonably be done, effect must be given to all the language of the will. The gift to the wife for her sole use and benefit, followed by the expression of a wish that all that may remain at or before the death of the wife may be disposed of, as stated by the wife's representative, reasonably conforms to the premise of a denominated life estate accompanied by an absolute power of disposition. Contra, we must ignore the phrase " at or before my said wife's death " and the stated reference to " all that may remain of my estate."

If the wife could have disposed of the corpus before her death,

then the mechanics of her disposition were unrestricted. It need not necessarily have been by will. The allusion to " all that may remain " is consistent only with the corollary that nothing, necessarily, might or need remain to be thus disposed of by her (*Leggett* v. *Firth*, 132 N. Y. 7, 11), and since no one else is given a power of disposal, it follows by necessary implication that the testator intended his wife to have that power over the corpus in connection with " her sole use and benefit." Having concluded, then, that the effect of the will was to give the wife an absolute power of disposition for her sole use and benefit, the next step is to inquire whether there are words in the will adequate to constitute a gift over of the remainder. It is noteworthy that the testator himself, directly, made no such attempt. He did express his wish with reference to a possible remainder, but his wish is as to what some one other than his representative " may " do.

A wish stated in a testament can of course father and mark the testamentary thought and intention, and thus convey the disposing will. But to have that effect it must survive over any repugnant rights and powers concurrently given. (*Clay* v. *Wood*, 153 N. Y. 134; *Street* v. *Gordon*, 41 App. Div. 439; *Matter of Barney*, 207 id. 25.) And, it seems to me, it must ever be related to the premise of a direct flow of title from the testator to the object of his bounty. Otherwise it is only a wish and not a will. Here, had the testator coupled his wish directly to the recipience by the three nephews of all that might remain, a strong case for his will in that regard would be made out. But, instead, the expression of his desire is directed elsewhere, for he wished as to something a stranger might do. We have here then an absolute and unrestricted power of disposal given a life tenant, and, to cut that down or qualify it, the precatory words must plainly and imperatively mark the requisite testamentary intent so to do. I find no authority that so classifies language expressive of a desire as to what a third party may do, and reason dictates none. Because of the reasons assigned, neither can I find that the gift to the wife was accompanied by any power in trust, and accordingly the conclusion is forced upon me that the effect of the will in question was to give the wife a fee in all the testator's property. This squares with the testamentary intent as coming from the " four corners of the will," and it was thus that her life estate was enlarged. (Real Prop. Law, §§ 149, 150, 151, 152, 153; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Crain* v. *Wright*, 114 id. 307, 310; *Hume* v. *Randall*, 141 id. 499; *Deegan* v. *Wade*, 144 id. 573, 577, 578; *Matter of Moehring*, 154 id. 423; *Rood* v. *Watson*, 54 Hun, 85, 87, 88; *Ryder* v. *Lott*, 123 App. Div. 685; *Matter of Lynn*, 34 Misc. 681.) In the last five cases just cited,

it was in substance held that the express characterization of an estate as one for and/or during the life of the grantee did not limit it to a life estate where the other elements specified by the statute are present, and estates expressly termed to be " for," "for and during," and " in " the life of the grantee were transmuted into an absolute fee by force of the terms and general policy of the statute, there having been no ulterior limitations and no accompaniment of powers in trust. The cited sections of the Real Property Law apply also to personal property. (*Cutting* v. *Cutting*, 86 N. Y. 522; *Matter of Moehring, supra.*)

The foregoing construction entails intestacy, and I have, therefore, sought to avoid it in an endeavor to adopt another to uphold the will. (*Greene* v. *Greene*, 125 N. Y. 506, 512.) But I have deemed it useless to attempt a construction to the effect that the gift to the wife was a life estate accompanied by a power of appointment over the remainder and whether with or without power to consume the corpus for her own benefit, and regardless of the statutory species of all such powers, because the death of the wife before the will became effective renders any present pursuit of such questions purely academic. (*Matter of Mayo*, 76 Misc. 416.) Had the will given the wife a special power in trust over the disposition of the remainder to the three nephews, it might be pertinent to inquire as to whether such power would in equity survive the death of the donee prior to the death of the grantor. Once such a power has vested it will survive the death of and its non-exercise by the donee, and be exercised by equity. (*Smith* v. *Floyd*, 140 N. Y. 337.) But query, Can it survive when it never vested in the donee because of the death of the latter prior to the death of a grantor testator? I have been cited to and can find no authority for such a proposition. But were we to hold, in the teeth of the statute (Real Prop. Law, §§ 149–153), that such a power was granted by this will, then certainly it could only be originated by the death of the grantor testator. The latter event would constitute the only source from which that power could be derived, and there was then lacking the essential of a medium whereby it could be vitalized, for the person to whom the power was to flow and by whom it was to be exercised was no more. (*Matter of Mayo, supra.*) To support the will in question reliance has been placed upon *Matter of Fordham* (235 N. Y. 384) and *Matter of Blumenthal* (124 Misc. 850), but there trusts were created by the express terms of the wills, followed by clearly expressed gifts over of the remainders, and it was held that the lapse caused by the death of the life tenant did not defeat the gifts of the remainders. *Decker* v. *High Street M. E. Church* (27 App. Div. 408) is also relied upon, but there also was

an express trust created for the benefit of a life tenant to whom was given a restricted power of appointment over the remainder. That power was not exercised, the life tenant having died prior to the testatrix, and it was held that the language of the will was sufficient to constitute a gift of the remainder. In these cases no question could arise as to the life estate having been enlarged to a fee.

To save the will, there is only left the argument of a direct gift to the three nephews, in form a gift of a remainder over, but, because of the lapse (due to the death of the wife), now in effect a direct gift of all the estate to them. True we may carve from the will these words " * * * it is my wish that all that may remain of my estate may be given to " the three nephews. If this alone comprised the will, it might suffice. It is contended that, since the testator permitted his will to stand after the death of his wife, we may thus delete the other language, and consider that his intention was that these three nephews were to take his entire estate. The testamentary intention must control, however awkward and unscientific may be the phraseology. Here resort to the extrinsic evidence may be had. From this it appears that the testator was in the eighty-seventh year of his age when he died. He was, therefore, about eighty-four when he executed the will in question. His wife predeceased him by fifty-two days, and while in her seventy-fourth year. The testator was an attorney and counselor at law, having been admitted to the bar of this State in 1869, after which he practiced his profession at Glens Falls, N. Y., for many years, where he lived nearly all his lifetime. He was supervisor of the town of Queensbury when it included the then village of Glens Falls. For the last twenty-five years of his life he had ceased the active practice of law, but up to nearly the time of his death he was active in writing articles for newspapers usually on current topics. On November 9, 1916, when then about seventy-five years old, and his wife sixty-three, he duly made his former will, which has been admitted in evidence. By this he gave to his wife in fee his Glens Falls real estate and certain demonstrative legacies. By its 2d paragraph he directed that the remainder of his estate be sold and converted into cash by the executors, " and that all monies received from such sales be placed in some Savings Bank and divided annually about December 10th, and after paying insurance, taxes and repairs on the properties in question," etc., " pay over the same as follows: 35% thereof to my nephew, John J. Keefe; 20% thereof to my nephew Herbert C. Keefe; 15% thereof to my niece Minnie Keefe; 15% thereof to my niece Ellen C. Keefe; and the remaining 15% to my nephew George F. Keefe, to be theirs absolutely."

We are not informed as to the relative parts of the estate that

this document purported to give the wife and dispose of as a remainder, but it is to be noted in passing that, had this become a will, another problem in construction would doubtless have been presented, viz.: Was there a valid disposal of the remainder or only an attempted gift of the income therefrom·to his said nephews and nieces in the allotted proportions, and, if the latter, for what period? We are also informed that the nephews and nieces named in the former will were brothers and sisters, and that the niece Minnie Keefe died without descendants after the former will was executed, but before the death of the testator. It further appears that three days before he executed his former will, to wit, on November 6, 1916, the testator made and executed a deed to the said niece, Ellen Keefe, which in terms conveyed to her the first parcel of land described in the complaint in this partition suit, but that this deed was never delivered, and was found among the papers and personal effects of the testator at or shortly after the time of his death. This deed was recorded five days after Mr. Keefe's death by an attorney who herein represents some defendants who now seek to uphold the will in question, but I understand that it is conceded it never became effective, due to non-delivery. Chronologically, there next follows the execution of the will in question on March 29, 1924, the death of testator's wife on October 1, 1927, after which he went to reside with his said niece, Ellen C. Keefe, on Jay street in Glens Falls, where he died fifty-two days later.

The record is barren of any other extrinsic evidence, but may we from what is shown glean enough to discern a testamentary intent that Mr. Keefe, after the death of his wife, permitted his will to continue and stand as one by which he intended to dispose of his entire estate to the three nephews named therein? Did he intend that the courts would construe his will only in the light of circumstances immediately attending his demise; that such construction would ignore the radical effect upon his will of the recent past event of his wife's death, and thus seek out and discover throughout all what was his real intent, affected as it had been by the occurrences of the past, and thereby in his will disregard that which no longer could be effective, and carve out only words that were a sentence portion, and amplify them from an incipient hortation to the strength of a solemn command and an imperative will? I think not. To do so, it seems to me, would constitute the making of a will by judicial construction when the necessary element of the testamentary intent is either wholly lacking, or too vague and shadowy for legitimate use. The extrinsic evidence does not enable me to sense the requisite intent, for it is too consistent with its negation. The whole testamentary plan was erected upon the

premise and in contemplation of the wife's surviving the testator. Her death frustrated it. Fifty-two days passed, and he died. Perhaps this eighty-seven-year old man did not have time to bring a new plan out of the conflict in his mind. He continued to hold the deed to his niece with whom he was living and from her his bounty, although his then instant testament cut her off from a former testamentary benefit. He was a lawyer. He must have known of the provisions of the will in question and that a lapse had occurred, and that his wish as to what some one else might do then had a different legal aspect. We are told he was active nearly to the time of his death in writing articles for the press, but he wrote nothing more for his testament. If he wanted his three nephews to have all his property, it seems to me he would have accomplished his desire by appropriate means. Furthermore, some of the extrinsic evidence to which I have alluded is of doubtful admissibility, although received under the stipulated facts. All of it having reference to circumstances and conditions occurring after March 29, 1924, the date of the execution of the will, must be removed in the search for the testamentary intent. The search is for the intent at the time of the execution of the will, not at the time of the testator's death. The will is ambulatory, but the intent must be found as a fixity on the date it was made. (*Morris* v. *Sickly*, 133 N. Y. 456, 459, 460; *Matter of Hoffman*, 201 id. 247, 255.) We may not, therefore, conclude that after the death of the wife such change in the testamentary intention took place as permits a rejection of the provision for the wife, and instead an altered meaning of the precatory words that accompanied it.

The plaintiff is entitled to judgment as prayed for, with costs, except that the description of the second parcel of real estate as contained in the complaint is to be amended in accordance with the stipulation of the parties as shown upon the record. Settle decision on notice, and on day of settlement any party may submit additional requests to find.