## COMMISSIONER OF INTERNAL REVENUE v. SOLOMON.

### No. 7762.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 10, 1941.

Decided Nov. 28, 1941.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to the Atty. Gen., on the brief), for petitioner.

William Wallace Booth, W. A. Seifert and T. P. Johnson, all of Pittsburgh, Pa., (Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., on the brief), for respondent.

Before MARIS, JONES and GOODRICH, Circuit Judges.

## GOODRICH, Circuit Judge.

The facts of this case, so far as relevant to the legal problem presented, can be very briefly stated. In 1928 Max Solomon and his wife, Amelia Solomon, set up a trust. Each contributed one-half of the corpus. By its terms the trust provided that the settlors could not recapture the corpus of the trust but there was reserved to them jointly, or the survivor, the power to modify terms and to substitute beneficiaries at will. The only limitation, therefore, denied the settlors the power to revest the trust property in themselves. Subsequently, Max Solomon died. His executor paid a tax on his estate which included the value of the one-half of the trust set up by himself and his wife in his lifetime. After her husband's death, Mrs. Solomon, on May 10, 1935, executed an instrument by which she relinquished the power to substitute beneficiaries or to alter the terms of the trust. The litigation in the instant case arises out of that operative fact. Is a gift tax due for the entire value of this trust res as of the date of the execution of this document? Or is the gift tax payable limited to the one-half of its value furnished by Mrs. Solomon? It is not denied that the government is entitled to tax that one-half. The taxpayer contends, however, that this is the limit of her liability, and the Board of Tax Appeals agreed with her. The Commissioner has petitioned to this court for review.

The Revenue Act in question is Section 501(a) of the Act of 1932.[1] The precise issue here involved has not been decided, but other points, relevant to its determination have been authoritatively settled. We know that in the case of an inter vivos transfer of property in trust, by a donor reserving to himself the power to designate new beneficiaries other than himself, the gift becomes complete and subject to the gift tax at the time of the relinquishment of the power. Estate of Sanford v. Commissioner of Internal Revenue, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20. We also have the rule summarized by the court in the decision just cited to the effect that a transfer of property in trust with power reserved to the donor to modify its terms so as to designate new beneficiaries is incomplete and becomes complete so as to subject the transfer to death taxes only on relinquishment of the power at death.[2] Those in charge of the estate of Max Solomon recognized this rule by including his half of the corpus of the trust in his estate for the purpose of the estate tax paid following his death. We have also the author-

---

[1] " * * * a tax * * * shall be imposed upon the transfer * * * by any individual * * * of property by gift." 26 U.S.C.A.Int.Rev.Code, § 1000(a).

[2] The development of this rule began with Porter v. Commissioner of Internal Revenue, 1933, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880.

ity of the Supreme Court expressed in the opinion in the Sanford case, and elsewhere, that the gift tax was supplementary, in its origin, to the estate tax; that the two are in pari materia and must be construed together; and that an important purpose of the gift tax is to prevent avoidance of death taxes by taxing certain inter vivos gifts. These signs seem to point toward the conclusion of non-liability for gift tax, as to that part of the trust furnished originally by her husband, with regard to Mrs. Solomon's act in relinquishing her power to change the terms of the trust.

The answer is clouded, however, by the argument based on another section of the Revenue Act of 1932 which includes, for the purpose of the estate tax, property passing under a general power of appointment.[3] If it could be assumed for the moment that what Mrs. Solomon had here was a general power of appointment with regard to the portion of the trust originally supplied by her husband, then, if she had died exercising by will that power to change, it could be said that the value of that portion was to be included in determining her estate tax. Then suppose she exercised the power inter vivos. If estate tax and gift tax are to be treated as supplementary so that the gift tax is to be imposed upon those transfers which escape the estate tax, then an inter vivos passing of the property by Mrs. Solomon could be considered an exercise of her general power of appointment and be subjected to the gift tax. This assumes, obviously, that Mrs. Solomon did exercise the power. One may seriously question whether such was the case here since the effect of the instrument she executed was to give up her power to change beneficiaries and the terms of the trust. If a power is not exercised, property does not pass under it.[4] But for the purpose of this discussion it may be assumed that giving up the power to select another is an appointment in favor of one originally named as beneficiary in the trust deed. Does the analogy apply?

The trouble with it is the assumption involved in its basic premise, namely, that Mrs. Solomon had a "general power of appointment". It is probably correct to treat her with regard to the one-half of the estate under consideration, as though she had been given the power to appoint this one-half in express terms. Whether this is technically correct does not matter in the view we take of the case. The power came into existence, if at all, under the Pennsylvania law and no apposite Pennsylvania decision has been found. But if it be assumed that Mrs. Solomon had a power of appointment over this one-half of the trust estate and she exercised it by will, should the value of the property be included in determining her estate tax? Congress has used the term "general power of appointment" but has not defined it. The kind of power of appointment the exercise of which will bring a federal tax into operation is not a question of state law, but of federal law. The Supreme Court squarely decided this point in Morgan v. Commissioner of Internal Revenue, 1940, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585, and Mr. Justice Roberts, writing the opinion for the Court, stated the meaning of the phrase as follows: "The distinction usually made between a general and a special power lies in the circumstance that, under the former, the donee may appoint to anyone, including his own estate or his creditors, thus having as full dominion over the property as if he owned it; whereas, under the latter, the donee may appoint only amongst a restricted or designated class of persons other than himself."[5] It may be conceded that the facts in the instant case do not bring Mrs. Solomon's power squarely within the terms of a "special power" as defined by the Supreme Court. Mrs. Solomon could have appointed the income of this trust to herself for life and the ap-

---

[3] Section 803(b), Revenue Act of 1932, amending Section 302(f), Revenue Act of 1926. 26 U.S.C.A.Int.Rev.Code, § 811(f).

[4] See Griswold, Powers of Appointment and the Federal Estate Tax (1939) 52 Harv.L.Rev. 929, 944.

[5] 309 U.S. at page 81, 60 S.Ct. at page 426, 84 L.Ed. 585. Similar language may be found in the Restatement of Property, § 320:

"(1) A power is general, as the term is used in this Restatement, if

(a) being exercisable before the death of the donee, it can be exercised wholly in favor of the donee * * *

* * * *

(2) A power is special, as the term is used in this Restatement, if

(a) it can be exercised only in favor of persons, not including the donee, who constitute a group not unreasonably large * * *."

pointees of the corpus did not have to be chosen from any limited group. But the facts do definitely exclude her power from being a general one as thus authoritatively defined for us, because she certainly did not have "as full dominion over the property as if [she] owned it". She could not have claimed the corpus for herself, certainly an important factor if one is to have "full dominion" over property.[6] If, then, the passing of the property by Mrs. Solomon's exercise of the power of appointment by will would not be the kind of transfer which would entail the imposition of an estate tax upon the passing of this one-half of the trust corpus, the argument by analogy that its transfer inter vivos (assuming that such a transfer was affected here) is taxable as a gift also fails.

We conclude, therefore, that Mrs. Solomon's relinquishment of her power to change the trust was not subject to the gift tax as to the one-half which came from her husband. This conclusion seems the more satisfactory for two reasons. The first is with regard to the tax structure itself. If estate and gift taxes are, on the whole, correlative this carries out that policy. The transfer of one-half was taxed upon Mr. Solomon's death. If Mrs. Solomon's relinquishment of the power of control over the one-half she contributed bears the gift tax, no transfer has escaped taxation.

■■ The result also fits into the general body of rules of law with regard to exercise of a power. It is recognized in many instances that property passing by a power of appointment comes from the donor of the power, not the donee. Thus the general rule is that the exercise of the power by will must conform to the law applicable to the donor, not the donee of the power.[7] The general concept of the law is that while the donee of the power gives direction to the gift, the gift itself comes from the donor of the power. These concepts do not, of course, bind congressional legislation in imposing taxes upon what transfers Congress sees fit to tax. But an interpretation which is in accord with general concepts of property law is preferable to one which is not, where such interpretation is left open by the language of the taxing act.

■ The conclusion thus reached is strengthened also by two other considerations bearing upon the problem in somewhat different aspects. The first is the settled attitude of the government itself with regard to situations where two or more persons have contributed to a common fund. It is to the effect that concerning property held by tenants by the entirety or in common or other forms of co-ownership, the amount thereof subject to an estate tax varies in direct proportion to the extent of the decedent's original contribution. This is the rule explicitly expressed in both the statutes and the Treasury Department's regulations.[8]

The second matter has to do with arguments made from the Sanford case and income tax cases where the point stressed by the court in determining liability for taxes

[6] The attitude of the Treasury Department is shown by the following Regulation: "Ordinarily a general power is one to appoint to any person or persons in the discretion of the donee of the power, or, however limited as to the persons or objects in whose favor the appointment may be made, is exercisable in favor of the donee, his estate, or his creditors." Article 24 of Regulations 80 (1937 Ed.).

[7] See Goodrich, Conflict of Laws (1938) § 173 and authorities cited therein. See also, Restatement of Property, § 333 where it is said, inter alia, that absent any legislation to the contrary, for the purpose of taxing statutes, "property covered by the power is not part of the 'estate' of the donee or 'property which passes by will' of the donee, whether or not the power is general and whether or not the donee exercises it * * *". In re McCord's Estate, 1923, 276 Pa. 459, 120

A. 413. See the discussion in Note (1933) 82 U. of Pa.L.Rev. 39, 46.

[8] See 26 U.S.C.A.Int.Rev.Code, § 811 (c) and (e); Treasury Regulations 80 (1937 Ed.) Art. 23, where it is said that no more shall be included in one's estate "than is represented by an outlay of funds". The same idea is implicit in numerous other instances as well. See, e. g., Arts. 19–21 of Regulations 80, and dealing specifically with the gift tax, Regulations 79 (1936 Ed.) Arts. 2(7) and (8). Colonial Trust Co. v. Commissioner of Internal Revenue, 2 Cir., 1940, 111 F.2d 740 interpreted § 302(d) of the Revenue Act of 1926 (§ 811(d), 26 U.S.C.A.Int.Rev. Code) along these lines, holding that in the case of a trust composed of property originally owned partly by the decedent and partly by his wife, the full extent of the former only was to be included in his estate.

was "power of control". But it is funda-
mental in those instances that the person
with control over the property was either
its owner or donor in the first instance.
Thus in Helvering v. Horst, 1940, 311 U.S.
112, 61 S.Ct. 144, 147, 85 L.Ed. 75, 131 A.
L.R. 655, from which the Commissioner
quoted to us as supporting his contention,
the Supreme Court emphasized that the
taxpayer "owns or controls the source" as
well as the disposition of the property in
question. Such is not the case here.

The decision of the Board of Tax Ap-
peals is affirmed.