## COMMISSIONER OF INTERNAL REVENUE v. WALSTON.

### No 5715.

Circuit Court of Appeals, Fourth Circuit.

May 6, 1948.

212

·Helen Goodner, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and Sewall Key and Lee A. Jackson, Sp. Asst. to Atty. Gen., on the brief) for petitioner.

Orwill V. W. Hawkins, of New York City, for respondent.

Before PARKER and SOPER, Circuit Judges, and BRYAN, District Judge.

SOPER, Circuit Judge.

This is a petition to review a decision of the Tax Court which reversed deficiencies in gift tax assessed by the Commissioner of Internal Revenue for the years 1932 to 1938 inclusive. The taxpayer, Lady Florence Walston, is a citizen of Great Britain and a resident of London. She was the daughter of David L. Einstein who died testate on May 8, 1909, a resident of the State of New York. Einstein was survived by his widow, Caroline, and three children: two daughters, Amy and Florence (the taxpayer), and a son, Lewis.

Einstein's will was probated in New York. By this instrument (executed in 1907) he divided his residual estate into three equal portions, which he designated as shares A, B and C. Each share was placed in trust, and one-half of the income from each share was ·bequeathed to his wife for life. Subject to this outstanding bequest, Florence was given the income for life from share A, remainder to her children. Similarly Amy was designated as the beneficiary for her life of the income from share B, remainder to her children. With respect to share C, from which this controversy stems, Einstein made a different and somewhat unusual disposition. The pertinent provisions of the will read:[1]

"* * * I give the net income of the whole (of) * * * Share C to my daughter Florence during her natural life, and on her death I give, devise and bequeath the capital fund of this share * * * to such person or persons, in such proportions, and if she please upon such trusts not being contrary to law as she may by her will appoint. I authorize and empower her, anything herein to the contrary notwithstanding, by deed or other act taking effect in her lifetime * * * to not only to retain to her own use, but also to appoint any person or persons being of my blood she shall think fit to receive the whole or any part of the income of this share during her life and to the extent that she lawfully may during the life of

[1] Since Einstein's wife died in 1910 prior to the occurrence of any of the events pertinent to the issues in this case, the language of the will referring to her outstanding life estate in one-half the income from share C is omitted.

my son Lewis, or for any shorter time, and such appointment or appointments to revoke and other or different appointments thereafter from time to time to make and to revoke. I further authorize and empower her, anything to the contrary herein notwithstanding, by deed or other act taking effect in her lifetime * * * to appoint any person or persons being of my blood she shall think fit to receive any part or parts of the capital of this share; and in the event of such appointment being made, I authorize and empower my trustees to transfer and pay over the amount or amounts of capital so appointed to the person or persons in that behalf designated by my said daughter."

The remaining provisions of this paragraph concern themselves with the disposition of the corpus in the event that Florence should fail to exercise her power of appointment.

This bequest was made by Einstein as the result of the marriage of his son Lewis to a divorced woman sixteen years his senior. Einstein disapproved of this marriage both because he thought it would injure Lewis' career in the Diplomatic Service, and because he entertained the suspicion that Lewis' wife had married him in the expectation that Lewis would inherit a portion of Einstein's fortune. As a consequence he decided not to leave a share of his estate to Lewis outright.

At the time Einstein executed this will he told Florence that he hoped each of his children would eventually inherit an equal share; that he intended that share C should be turned over to Lewis if everything turned out all right; that he wanted Florence to watch over Lewis and that she should have unfettered control to decide when and how Lewis should inherit his share; that he had given her broad powers of appointment with respect to the income and principal of share C because she knew his wishes in the matter and he knew that he could trust her; and that he wanted her to turn over share C to Lewis when and if she thought it right that he should have it.

On April 25, 1911, Florence appointed herself to receive the whole of the capital of share C. It was her intention to carry out her father's wishes by then disposing of share C in a trust deed to be executed by her. While an application was pending before the surrogate of the County of New York for approval of this appointment, Florence and Lewis entered into an agreement on February 2, 1912, whereby Florence agreed that, in the event it was determined that she could not appoint herself to receive the capital of share C, she would pay Lewis out of the income from this share the sum of $1,666.66 per month during their joint lives, and would execute an appointment by will of a sufficient part of share C to pay Lewis the same amount per month during his life. Florence did not reserve to herself any power of revocation with respect to this agreement.

In 1913 the trustees under Einstein's will brought a suit in the Supreme Court of the State of New York, New York County, to determine whether Florence could appoint herself to receive the corpus of share C, and also whether share C was impressed with a secret trust in favor of Lewis. Both these questions were answered in the negative. N. Y. Law Journal, April 14, 1914, p 198. The court observed that while Florence came within the literal description of the class to whom the corpus of share C might be appointed, it was satisfied that Einstein did not intend that Florence should have the power to appoint the capital to herself.

On January 1, 1920, Florence and Lewis executed an agreement whereby Florence appointed Lewis to receive the entire income from share C for his life, but limited to the joint lives of Lewis and Florence. This appointment was expressly declared to be subject to Florence's power of revocation. Lewis agreed to waive payment of the $1,666.66 per month provided in the agreement of February 2, 1912, as long as the 1920 appointment remained in effect. Pursuant to the 1920 appointment, the income from share C was paid to Lewis periodically until August 23, 1938.

On May 3, 1938, Florence appointed Lewis to receive forthwith and absolutely, one-half of the corpus of share C and the income from the remaining half of share C for his life, whether or not he should survive Florence. These appointments were

declared to be irrevocable and Florence, after revoking all previous appointments, expressly relinquished her power of revocation with respect to them. They became effective on August 24, 1938.

The Commissioner, upon these facts, took the position that Florence had made taxable gifts to Lewis. With respect to the payments to Lewis under the 1920 appointment prior to August 24, 1938, he was of the view that, by reason of the power of revocation reserved to Florence, taxable gifts were made in each year following the enactment of the gift tax on July 6, 1932, 47 Stat. 169, (including the latter part of 1932), minus the amount of $20,000 per year as to which he determined that Florence had irrevocably committed herself by the 1912 agreement. As to the irrevocable appointments in 1938, the Commissioner was of the opinion that Florence had made a gift of her right to receive the income for the rest of her life, again minus the value of Lewis' right to receive $20,000 annually for his life. In other words, the Commissioner restricted himself to income to which Florence would have been entitled during her life had she made no appointments, but he did not attempt to tax the appointments as gifts insofar as they related to transfers of interests after her death. The Tax Court, six members dissenting, disallowed the assessments.

The position of the Commissioner is two-fold. He contends (1) that a transfer of property in the exercise of a power of appointment after June 6, 1932, although not expressly mentioned in the Gift Tax Act of that date, 47 Stat. 168, 26 U.S.C.A. Int.Rev.Code, § 1000 et seq., is nevertheless a taxable gift covered thereby; and (2) that the transfers by Florence to her brother of income from share C did not actually involve the exercise of powers of appointment but constituted gifts of an interest in the life estate in share C bequeathed to her by her father and given by her in turn to her brother.

If the exercise of a power of appointment is a gift taxable under the 1932 act, it is clear that the Commissioner's assessments should be sustained both as to the 1938 and 1920 appointments. As to the 1938 appointment, there could be no question,

since it occurred after the passage of the act. As to the 1920 appointment, it is equally certain that tax liability would attach for the period June 7, 1932, to August 23, 1938, despite the fact that the appointment was made prior to the enactment of the gift tax. This would be true because Florence reserved to herself a power of revocation in the 1920 appointment, and it is settled that where a donor reserves such a power, the gift is not perfected and tax liability does not attach until the donor surrenders this power; and if money is paid out periodically prior to the surrender of the power of revocation, then tax liability arises with respect to each payment at the time it is made. Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; see Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20. We are thus squarely confronted with the question whether the exercise of a general power of appointment is a gift under the 1932 act.

Section 501 of the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A.Int.Rev.Code, § 1000, provided:

"(a) For the calendar year 1932 and each calendar year thereafter a tax * * * shall be imposed upon the transfer during such calendar year by any individual, resident or nonresident, of property by gift.

"(b) The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible."

The question is whether the exercise of a general power of appointment in the transfer of property may be regarded as a "transfer * * * of property by gift" by the donee of the power. We think that the answer to this question is found in the decision of the Supreme Court in United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461, which arose under the estate tax provisions of the Revenue Act of 1916, 39 Stat. 777, § 201. This statute imposed a tax "upon the transfer of the net estate of every decedent dying after the passage of this Act," and provided that the net estate was to be determined by making certain deductions from the gross estate which should include the interest of the decedent in any property subject

to the payment of charges against his estate and the expenses of its distribution, and subject to distribution as part of his estate. The decedent in that case possessed a life interest in the income of an estate in trust and a general power of appointment with respect to the income from the trust estate after her death. She exercised this power in her will and the Collector of Internal Revenue included the estate passing under her execution of the power, in her estate. The Supreme Court held that the appointed estate was improperly included in her gross estate for the reason that the existence of the power did not itself vest any estate in the donee of the power,[2] and hence the appointed estate was not the property of the decedent at the time of her death, and was not subject to distribution as part of her estate.

The estate tax law was amended in order to change this situation by the enactment of Section 402(e) of the Revenue Act of February 24, 1919, 40 Stat. 1097, which provided that the gross estate of a decedent should include any property passing under a general power of appointment by will or by deed executed in contemplation of or intended to take effect in possession or enjoyment at or after his death with certain exceptions.

This history of the estate tax statute demonstrates that the subjection of a transfer of property to taxation in general terms does not include property transferred by a taxpayer under a power of appointment conferred by the owner, and that a specific enactment in express terms is needed to accomplish such a purpose. It was in this state of the law that the gift tax statute was passed in 1932 in order that transfers by gift inter vivos might be taxed, thereby supplementing the revenue derived from the taxation of transfers of property in the distribution of decedents' estates and transfers in a decedent's lifetime made in contemplation of death or intended to take effect in possession or enjoyment at or after death. Nevertheless Congress in 1932 confined itself to the taxation of the transfer of property by gift, using substantially the same general language which in United States v. Field had been held inadequate to cover transfers in the exercise of a power of appointment. In that case the court pointed out how easy it would have been for Congress to express a purpose to tax property passing under a power of appointment, had such a purpose existed. In the light of this outstanding decision, and of the warning which it contained, it is inconceivable that the general terms of the gift tax statute should be construed so as to include the exercise of a power of appointment generally; for we must conclude that Congress deliberately omitted from the gift tax statute provisions corresponding to those in the Act of 1919 whereby transfers of property by a decedent under a power of appointment were subjected to taxation. We think that this line of reasoning is inevitable because we are told that "in ascertaining the correct construction of the statutes taxing gifts, it is necessary to read them in the light of the closely related provisions of the revenue laws taxing transfers at death, as they have been interpreted by our decisions." Estate of Sanford v. Commissioner, 308 U.S. 39, 42, 60 S.Ct. 51, 55.

The taxing authorities adopted this view prior to the year 1942, and the transfer of property in the exercise of a power of appointment during the decade from 1932

---

[2] In Hogarth-Swann v. Weed, 274 Mass. 125, 129, 174 N.E. 314, 315, Chief Justice Rugg described the incidence of a power of appointment in the following language: "The nature of the devolution of an estate by the exercise of a power of appointment has been settled by adjudications. The property to be appointed does not belong to the donee of the power, but to the estate of the donor of the power. By the creation of the power, the donor enables the donee to act for him in the disposition of his property. The appointee designated by the donee of the power in the exercise of the authority conferred upon him does not take as legatee or beneficiary of the person exercising the power but as recipient of a benefaction of the person creating the power. It is from the donor and not from the donee of the power that the property goes to the one who takes it. The right to exercise the power is not the property, and cannot be reached by the creditors of the donee of the power." See also Matter of Harbeck, 161 N.Y. 211, 218, 55 N.E. 850; Leser v. Burnet, 4 Cir., 46 F.2d 756.

to 1942 was thought not to be taxable. Grasselli v. Commissioner, 7 T.C. 255; Clark v. Commissioner, 47 B.T.A. 865; cf. DuPont v. Commissioner, 2 T.C. 246; and no attempt was made by the Commissioner prior to 1942 to issue a regulation including such a transfer amongst taxable gifts. Randolph Paul, tax advisor to the Secretary of the Treasury, in order to supply the omission, recommended to the Ways and Means Committee of the House of Representatives on March 3, 1942, that "the gift tax statute should include the exercise or surrender of all powers subject to the estate tax." C. C. H. Service, App. 55, p. 27. This recommendation was incorporated in Section 452(a) of the Revenue Act of 1942, Ch. 619, 56 Stat. 798, 26 U.S.C. Int.Rev.Code, § 1000, by the provision that, subject to certain limitations, an exercise or release of a power of appointment should be deemed a transfer of property by the individual possessing the power.

This statute was not intended to be retroactive; Grassell v. Commissioner, supra; but the Committee Reports included the statement that the amendments should not be construed as a limitation on the application of the existing gift tax law (of 1932) with respect to the exercise or release of a power of appointment. S.Rep. No. 1631, 77 Cong. 2d Sess. p. 243 (1942-2 Cum.Bull. 504, 682); H.Conference Rep. No. 2586, 77 Cong. 2d Sess. p. 71 (1942-2 Cum.Bull. 701, 726). Subsequently Treasury Regulations 79, Art. 2(b), was promulgated which provides that the exercise of a power of appointment after June 6, 1932, and before January 1, 1943, constitutes a gift by the individual possessing power if exercised under conditions which would include those which prevailed at the time of the transfers in suit.

It is contended that this belated attempt to tax that which was previously considered non-taxable is valid notwithstanding the legislative and judicial history to which we have referred, because Section 501(b) of the gift tax Act of 1932 provides that the gift tax shall apply whether the transfer is in trust or otherwise, whether the gift was direct or indirect, and whether the property is real or personal, tangible or intangible. This language, however, sweeping though it is, is confined to gifts, and a transfer of property under a power is not a gift by the donee of the power. Our conclusion is that prior to 1942 transfers of property under a power of appointment did not constitute taxable gifts and therefore the regulation passed in 1942 is invalid. Cf. Paul on Federal Estate and Gift Taxes, 1946 Supp. pp. 290-1; Commissioner of Internal Revenue v. Solomon, 3 Cir., 124 F.2d 86.

We come then to the contention that the taxpayer did not in fact accomplish the transfer of the property interests to her brother by the exercise of powers of appointment, but gave him property which belonged to her. Consideration of this question calls for an interpretation of the will. It will have been noticed that the testator gave the net income of share C to Florence during her natural life; but he also gave her the power to appoint any person of his blood to receive the whole or any part of that income, anything in the will to the contrary notwithstanding. We must decide from which of these provisions the taxpayer derived the power to make the transfers to her brother. It should be added that the taxpayer was given a similar power of appointment, anything in the will to the contrary notwithstanding, to appoint any person of the testator's blood to receive the capital of share C. No claim is made that this transfer was taxable as a gift, presumably because the taxpayer was not given the capital by the will, and because the Supreme Court of New York County held that the testator did not intend her to appoint herself, but only some one other than herself, to receive the capital. The efficacy of the power of appointment so far as the capital is concerned is not denied. It is contended, however, that the power of appointment as to the income, given in substantially the same words, was not exercised by the taxpayer.

Indeed the dissenting members of the Tax Court were of the opinion that the testator did not give a power of appointment over the life interest in the income, or rather that the testator, having given his daughter Florence the income for life-

outright, did not restrict or cut down the bequest by the later words empowering her to appoint the income to her brother. These later words were thought by the dissenters not to be sufficiently clear and decisive, under the New York decisions, to limit what had already been expressly given to the taxpayer herself and should therefore be treated as surplusage. See Keefe v. Keefe, 134 Misc. 705, 236 N.Y.S. 176, Id., 230 App.Div. 654, 246 N.Y.S. 389, Id., 257 N.Y. 604, 178 N.E. 814.

The minority were also of the opinion that the evidence as to the testator's intention tended to show that Florence received a permanent life estate since there was testimony that he desired her to have unfettered control over the trust property and the income therefrom.

The Commissioner advances the additional argument that since by the will of the decedent Florence was given an absolute estate in the income for life, coupled with the power to appoint other members of the family to receive it during her life, and also to revoke such an appointment at will, she had such complete control over the property that she must be regarded as the owner of it so that her subsequent relinquishment of it to her brother had all the essentials of a gift and should be so regarded in the practical field of taxation.[3]

The view of the majority of the Tax Court is shown in the following quotation from its opinion:

"Why did the decedent give petitioner the power to appoint the income of share C to a person or persons of his blood during her lifetime? Obviously, if it was his intention that she should have an absolute life interest in the income of share C the provision giving her this power would have been mere surplusage. The only logical answer is that he wanted his three children to eventually receive an equal share of his residuary estate and he wanted to place Florence in a position to pass on the inheritance he intended for Lewis, share C, when the time was propitious. Without this power, petitioner, under the law of New York, could not have alienated or appointed any part of the income of share C to anyone. New York Personal Property Law, Consol.Laws, c. 41, sec. 15.[4] A 'power of appointment' is defined as a power of disposition given a person over property not his own. Thompson v. Pew, 214 Mass. 520, 102 N.E. 122; In re Howald's Trust, 65 Ohio App. 191, 29 N.E.2d 575. Apparently the testator was aware of this definition, and that the giving of the power of appointment over the income of share C to Florence was inconsistent with the life interest in the income previously given her, and that is why he used the words "anything herein to the contrary notwithstanding" in conferring upon her the power. These words clearly indicate that he intended the power of appointment to prevail over the life interest in Florence. 'A life estate is terminated by

---

[3] The Commissioner relies especially on Cerf v. Commissioner, 3 Cir., 141 F.2d 564, and Richardson v. Commissioner, 2 Cir., 151 F.2d 102, as indicating that the taxpayer in the pending case was acting in her own right as donor rather than in the exercise of the powers of appointment; but these cases are not persuasive in this regard. The Cerf case did not involve an exercise of the power of appointment in any just sense of the term, but rather a surrender by the wife to the husband of rights which she had initially acquired from him. Likewise in the Richardson case it is plain that an exercise of a power of appointment was not involved, but a gift by the trustee of property which, for all practical purposes, was his own.

[4] 40 McKinney's Consolidated Laws of New York, Annotated, Personal Property Law, Article 2:

Sec. 15. Personal property not alien-

able in certain cases.—1. The right of the beneficiary to enforce the performance of a trust to receive the income of personal property, and to apply it to the use of any person, can not be transferred by assignment or otherwise. But the right and interest of the beneficiary of any other trust in personal property, including the beneficiary of a trust in personal property under a plan of reorganization pursuant to chapter seven hundred forty-five of the laws of nineteen hundred thirty-three, as enacted or amended, and/or pursuant to chapter nineteen of the laws of nineteen hundred thirty-five, as enacted or amended, and/or pursuant to sections one hundred nineteen to one hundred twenty-three, both inclusive, of the real property law or pursuant to section seventy-seven-b of the national bankruptcy act, may be transferred.

the event of any contingency named in the instrument creating the estate as a limitation for its continuance.' 31 C.J.S., Estates, § 65, page 79. As we construe the provisions of the decedent's will with respect to share C, in the light of the surrounding circumstances, Florence received a temporary interest in the income of share C which might last for life, but was subject to be terminated if and when the power of appointment was exercised. The power of appointment was given over the interest in the income of share C which commenced when her interest terminated. This construction harmonizes the two inconsistent provisions so as to give effect to each in accordance with the testator's intention."

We are in accord with this conclusion. It is true that there is no New York case which decides that a testator is prohibited by Section 15 of the New York personal property law from providing in his will that the beneficiary of income for life may alienate the interest; and it may be, in view of certain judicial interpretations of the statute, that such a power exists.[5] Nevertheless the matter is not free from doubt, and the direction in the will that Florence should possess the powers of appointment, in order, as the evidence shows, to carry out her father's wishes, had a real place in the will and is too clear to be ignored.

■■ In any event, we do not think it necessary to decide this technical question of New York law. We are not concerned with technical refinements of title to property but with the substance of the transactions under consideration. It is perfectly clear that the father intended his daughter to possess the power to designate the recipients of the income from share C, and that having regard to the purpose for which it was created and the manner in which it was to be exercised, it partook of the characteristics of a true power. It was created by Einstein with the understanding that Florence should watch over Lewis and turn over share C to him when she thought it right that he should have it.

Its creation was not prompted by any desire on the part of Einstein to enrich Florence, but by his disapproval of Lewis' marriage and his faith that Florence would give effect to his wishes in the matter. She did not at any time consider the income or principal of share C as her property. In appointing Lewis to receive the income and one-half the corpus, she felt that she was merely carrying out her father's wishes and disposing of his property, and she believed that he would have approved her actions, as Lewis' career and marriage had turned out very well. These were the findings of the Tax Court and they have ample support in the evidence. Certainly, on this state of facts, the conclusion of the Tax Court that Florence exercised a power of appointment in 1920 and again in 1938 was a reasonable one, and could not be disregarded by us. Dobson v. Commissioner, 320 U.S. 489, 64 S. Ct. 239, 88 L.Ed. 248.

Any other decision would involve us in a confusion of ideas that could not be defended. It is conceded that by the deed of May 3, 1938, Lewis acquired title to one-half of the capital of share C and at the same time title to one-half of the income of the other half of share C for life, whether he survived Florence or not. It must also be conceded that the title to the capital, and also the title to the income after the death of Florence, were transferred to him only by virtue of the power of appointment which Florence exercised, because she did not have title to the capital nor any right to the income after her death. It is thus seen that the Commissioner's contention would require us to hold that in one and the same instrument the taxpayer was acting under the power of appointment as to the capital and one part of the income conveyed and in her own right as owner of the remainder of the income, although she purported to act in the same capacity with respect to all the interests transferred.

Since the powers of appointment as to the capital and as to the income, that accruing in her lifetime and also that accru-

---

[5] See Griswold, Spenthrift Trusts, 2d Ed., 1947, § 286.2; Matter of Caswell's Estate, 185 Misc. 599, 56 N.Y.S.2d 507; Ullman v. Cameron, 186 N.Y. 339, 78 N. E. 1074, 116 Am.St.Rep. 553; Crooke v. County of Kings, 97 N.Y. 421, 433; Farmers Loan & Trust Co. v. Kip, 192 N.Y. 266, 280, 85 N.E. 59.

ing after her death during the life of Lewis, were created in substantially the same language in the same will and were exercised by the donee of the power at the same time in the same deed, it would be unreasonable to conclude that as to part of the property conveyed she was not acting as the donee of a power but as an owner in her own right.

The decision of the Tax Court is affirmed.