## SANFORD'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6776.

Circuit Court of Appeals, Third Circuit.

March 25, 1939.

Writ of Certiorari Granted
May 15, 1939.

See 59 S.Ct. 836, 83 L.Ed. —.

Montgomery B. Angell and Otis T. Bradley, both of New York City, William A. Carr, of Philadelphia, Pa., and Marvin Lyons, of New York City, for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Helen R. Carloss, Sp. Assts. to the Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals. The facts hereinafter stated were stipulated and are set forth substantially as found in the petitioner's brief:

On December 24, 1913, Charles Henry Sanford, by a single trust indenture created certain trusts naming Guaranty Trust Company of New York as Trustee, and on that date and at various times thereafter transferred certain property to the Trustee. Of these trusts, four alone are here involved, the "Sarita E. Barclay Trust", the "Frances G. Phipps Trust", the "Herbert S. Ward Trust" and the "Colville H. S. Barclay Trust". These four named beneficiaries were alive and in being on August 21, 1924. The trustee was directed to dispose of the income and ultimately the principal of the different trusts to the named beneficiaries in accordance with the provisions of the trust indenture.

The trust indenture of December 24, 1913, contained, among others, the following provision: "The party of the first part (Sanford), however, reserves the right to terminate or modify any or all of the trusts herein created by a suitable instrument in writing executed under his hand and seal and duly acknowledged as a deed of real estate is required to be acknowledged under the laws of the State of New York and filed with the party of the second part." (Guaranty Trust Company of New York.)

Under the power reserved in this provision, Sanford from time to time executed certain supplemental trust indentures amending the provisions of the trusts. Of these, only two are material, namely, the indenture dated November 26, 1919, and the indenture dated August 21, 1924.

By the supplemental indenture of November 26, 1919, Sanford surrendered the power to terminate and to revest in himself all or any part of the income or corpus of the trusts, reserving only a power to modify the trusts in other respects, such as, for example, the power to change

beneficiaries. Thus in the supplemental indenture of November 26, 1919, after reciting the powers reserved in the original indenture quoted above and the desire of the settlor to modify such "above-quoted provision," the indenture of November 26, 1919, provided:

"Now, Therefore, the party of the first part does hereby modify the same so that the said clause shall read as follows:

" 'The party of the first part, however, reserves the right to modify any or all of the trusts herein created by suitable instruments in writing executed under his hand and seal and duly acknowledged as a deed of real estate is required to be acknowledged under the laws of the State of New York, and filed with the party of the second part; but this right of modification, however, shall in no way be deemed or construed to include any right or privilege in the party of the first part to withdraw principal or income from any trust created by this instrument.' "

Sanford's powers in respect of the trusts lay in this condition for some five years. On August 21, 1924, by a supplemental indenture executed on that date, Sanford surrendered and renounced all the remaining powers over the trusts. Thus the indenture of August 21, 1924, after reciting certain paragraphs of the trust indenture as amended, including the above quoted paragraph in the supplemental indenture of November 26, 1919, provided that such recited paragraphs—

"are hereby revoked and in their place and stead the following terms shall apply and govern as to each and every trust created hereunder, to wit:

\* \* \* \* \* \*

"7. The party of the first part hereby renounces all rights to further modify the terms of the said trusts or any of them and does hereby surrender all such rights reserved to him by the indenture of December 24th, 1913, and by the various indentures supplemental thereto."

Sanford did not file a gift tax return for 1924. He died in 1928 and the administrator of his estate, after a revenue agent had raised the question as to whether the surrender in 1924 of the power to modify the trusts subjected the transfer to a gift tax at that time, filed a gift tax return with the Collector of Internal Revenue for the District of New Jersey. The property held by the trustee on August 21, 1924, was listed in the return, but the administrator,

on behalf of the estate, disclaimed any liability for the tax. The aggregate value of the property held in the trusts as of that date was $6,846,225.06.

Conferences were thereafter held between representatives of the taxpayer and representatives of the Government. A tentative ruling of the Bureau of Internal Revenue held that the gifts were made in 1924, and hence were subjected to tax. A later ruling held that the transfers became effective on November 26, 1919, when Sanford relinquished his right to terminate the trusts and the power to modify them in such a way as to enable him to withdraw principal or income, and that since the gifts were completed before any gift tax law became effective, they were not subject to the tax. This ruling was approved by the Under-Secretary of the Treasury, and the petitioner was notified on April 19, 1935, that the gift tax return for 1924 disclosed no tax liability and the case had been marked closed. However, the case was reopened in the Bureau after the decision of the Circuit Court of Appeals for the Second Circuit in the case of Hesslein v. Hoey, 91 F.2d 954, certiorari denied, 302 U.S. 756, 58 S.Ct. 284, 82 L.Ed. 585, and on October 16, 1937, the Commissioner mailed a notice of a deficiency in the amount of $1,000,745.

Upon appeal the Board of Tax Appeals sustained the action of the Commissioner in asserting the deficiency.

The Revenue Act of 1924 (43 Stat. 253), approved June 2, 1924, imposed a tax upon the transfer of property by gift. No gift tax was in effect in previous years.

Section 319 provided: "For the calendar year 1924 and each calendar year thereafter, a tax equal to the sum of the following is hereby imposed upon the transfer by a resident by gift during such calendar year of any property wherever situated, whether made directly or indirectly, and upon the transfer by a nonresident by gift during such calendar year of any property situated within the United States, whether made directly or indirectly." 43 Stat. 313.

Article 1 of Treasury Regulations 67, promulgated under the Revenue Act of 1924, provides: "The creation of a trust, where the grantor retains the power to revest in himself title to the corpus of the trust, does not constitute a gift subject to tax, but the annual income of the trust

which is paid over to the beneficiaries shall be treated as a taxable gift for the year in which so paid. Where the power retained by the grantor to revest in himself title to the corpus is not exercised, a taxable transfer will be treated as taking place in the year in which such power is terminated."

This is a negative provision that the gift is not completed if the settlor retains the power to revest the corpus of the trust in himself. The petitioner maintains that by reason of the Act and Regulation a gift is completed when the settlor surrenders his power to terminate the trust and his privilege to withdraw the principal and interest. This took place on November 26, 1919, which was prior to the effective date of the gift tax act. The Commissioner argues that the gift remained incomplete until such time as the settlor surrendered his right to make any modifications of the terms of the trust. This took place on August 21, 1924, after the effective date of the gift tax act.

 The Commissioner frankly admits that in Hesslein v. Hoey, supra, the Government took the position that the gift became effective when the settlor surrendered all power to revest title in himself or his estate. The Circuit Court of Appeals for the Second Circuit, however, rejected this view and held that a transfer to a trust was not taxable as a gift so long as the settlor retained the power to modify the trust, even though the modification did not result in a benefit to himself or his estate. Despite a dissent by one of the Circuit Court Judges, the Supreme Court denied certiorari 302 U.S. 756, 58 S.Ct. 284, 82 L.Ed. 585. Had it not been for the ruling by the Second Circuit and the action of the Supreme Court in denying certiorari, we would have favored the view that the tax was imposed on the transfer of property and that the transfer took place when the trustee was given such possession that the settlor could not regain it for himself or his estate. We are persuaded by the reasoning of the majority opinion in Hesslein v. Hoey, supra, that a gift is not complete if the donor has the power and privilege to take everything away from the named donee and designate another donee, or to prolong the time before the donee takes possession or to alter the conditions with which the donee must comply before being given possession. Accordingly, we reach the conclusion that until

the right to modify the trust agreements was surrendered, there were no gifts upon which a gift tax could be imposed.

The opinion of the Supreme Court in Helvering v. R. J. Reynolds Tobacco Company, 59 S.Ct. 423, 83 L.Ed. ——, opinion filed January 30, 1939, does not dispose of the question involved in the instant case.

The decision of the Board of Tax Appeals is affirmed.