# ESTATE OF SANFORD *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 34.   Argued October 18, 19, 1939.—Decided November 6, 1939.

40

*Mr. Montgomery B. Angell,* with whom *Messrs. John W. Davis, Otis T. Bradley, William A. Carr,* and *Marvin Lyons* were on the brief, for petitioner.

*Miss Helen R. Carloss,* with whom *Solicitor General Jackson, Assistant Attorney General Clark,* and *Messrs. Sewall Key, J. Louis Monarch,* and *Richard H. Demuth* were on the brief, for respondent.

By leave of Court, *Messrs. Beverley R. Robinson, E. N. Perkins,* and *Weston Vernon, Jr.* filed a brief, as *amici curiae,* urging reversal.

MR. JUSTICE STONE delivered the opinion of the Court.

This and its companion case, *Rasquin* v. *Humphreys, post,* p. 54, present the single question of statutory construction whether in the case of an *inter vivos* transfer of property in trust, by a donor reserving to himself the

power to designate new beneficiaries other than himself, the gift becomes complete and subject to the gift tax imposed by the federal revenue laws at the time of the relinquishment of the power. Corelative questions, important only if a negative answer is given to the first one, are whether the gift becomes complete and taxable when the trust is created or, in the case where the donor has reserved a power of revocation for his own benefit and has relinquished it before relinquishing the power to change beneficiaries, whether the gift first becomes complete and taxable at the time of relinquishing the power of revocation.

In 1913, before the enactment of the first gift tax statute of 1924, decedent created a trust of personal property for the benefit of named beneficiaries, reserving to himself the power to terminate the trust in whole or in part, or to modify it. In 1919 he surrendered the power to revoke the trust by an appropriate writing in which he reserved "the right to modify any or all of the trusts" but provided that this right "shall in no way be deemed or construed to include any right or privilege" in the donor "to withdraw principal or income from any trust." In August, 1924, after the effective date of the gift tax statute, decedent renounced his remaining power to modify the trust. After his death in 1928, the Commissioner following the decision in *Hesslein* v. *Hoey*, 91 F. 2d 954, in 1937, ruled that the gift became complete and taxable only upon decedent's final renunciation of his power to modify the trusts and gave notice of a tax deficiency accordingly.

The order of the Board of Tax Appeals sustaining the tax was affirmed by the Court of Appeals for the Third Circuit, 103 F. 2d 81, which followed the decision of the Court of Appeals for the Second Circuit in *Hesslein* v. *Hoey, supra*, in which we had denied certiorari, 302 U. S. 756. In the *Hesslein* case, as in the *Humphreys* case now

before us, a gift in trust with the reservation of a power in the donor to alter the disposition of the property in any way not beneficial to himself, was held to be incomplete and not subject to the gift tax under the 1932 Act so long as the donor retained that power.

We granted certiorari in this case, 307 U. S. 618, and in the *Humphreys* case, *id*. 619, upon the representation of the Government that it has taken inconsistent positions with respect to the question involved in the two cases and that because of this fact and of the doubt of the correctness of the decision in the *Hesslein* case decision of the question by this Court is desirable in order to remove the resultant confusion in the administration of the revenue laws.

It has continued to take these inconsistent positions here, stating that it is unable to determine which construction of the statute will be most advantageous to the Government in point of revenue collected. It argues in this case that the gift did not become complete and taxable until surrender by the donor of his reserved power to designate new beneficiaries of the trusts. In the *Humphreys* case it argues that the gift upon trust with power reserved to the donor, not afterward relinquished, to change the beneficiaries was complete and taxable when the trust was created. It concedes by its brief that "a decision favorable to the government in either case will necessarily preclude a favorable decision in the other."

In ascertaining the correct construction of the statutes taxing gifts, it is necessary to read them in the light of the closely related provisions of the revenue laws taxing transfers at death, as they have been interpreted by our decisions. Section 319 *et seq*. of the Revenue Act of 1924, 43 Stat. 253, reenacted as § 501 *et seq*. of the 1932 Act, 47 Stat. 169, imposed a graduated tax upon gifts. It supplemented that laid on transfers at death, which had long been a feature of the revenue laws. When the gift tax

was enacted Congress was aware that the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title. See *Burnet* v. *Guggenheim*, 288 U. S. 280, 287. Following the enactment of the gift tax statute this Court in *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339 (1929) held that the relinquishment at death of a power of revocation of a trust for the benefit of its donor was a taxable transfer, cf. *Saltonstall* v. *Saltonstall*, 276 U. S. 260; *Chase National Bank* v. *United States*, 278 U. S. 327; and similarly in *Porter* v. *Commissioner*, 288 U. S. 436 (1933), that the relinquishment by a donor at death of a reserved power to modify the trust except in his own favor is likewise a transfer of the property which could constitutionally be taxed under the provisions of § 302 (d) of the 1926 Revenue Act (reënacting in substance 302 (d) of the 1924 Act) although enacted after the creation of the trust. Cf. *Bullen* v. *Wisconsin*, 240 U. S. 625; *Curry* v. *McCanless*, 307 U. S. 357; *Graves* v. *Elliott,* 307 U. S. 383. Since it was the relinquishment of the power which was taxed as a transfer and not the transfer in trust, the statute was not retroactively applied. Cf. *Nichols* v. *Coolidge,* 274 U. S. 531; *Helvering* v. *Helmholz*, 296 U. S. 93, 98.

The rationale of decision in both cases is that "taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed" (see *Corliss* v. *Bowers,* 281 U. S. 376, 378; *Saltonstall* v. *Saltonstall, supra,* 261; *Burnet* v. *Guggenheim, supra,* 287) and that a retention of control over the disposition of the trust property, whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished whether in life or at death. The rule was thus established, and has ever since been consistently followed by the Court, that a transfer of property upon trust, with power reserved to the donor either to revoke it and recapture the trust property or to modify its terms

so as to designate new beneficiaries other than himself is incomplete, and becomes complete so as to subject the transfer to death taxes only on relinquishment of the power at death.

There is nothing in the language of the statute, and our attention has not been directed to anything in its legislative history to suggest that Congress had any purpose to tax gifts before the donor had fully parted with his interest in the property given, or that the test of the completeness of the taxed gift was to be any different from that to be applied in determining whether the donor has retained an interest such that it becomes subject to the estate tax upon its extinguishment at death. The gift tax was supplementary to the estate tax. The two are in *pari materia* and must be construed together. *Burnet* v. *Guggenheim, supra,* 286. An important, if not the main, purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property *inter vivos* which, but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death.[1]

---

[1] The gift tax provisions of the Revenue Act of 1924 were added by amendments to the revenue bill introduced on the floor of the House and the Senate. Cong. Rec., Vol. 65, Part 3, pp. 3118–3119; Part 4, pp. 3170, 3171; Part 8, p. 8094. The sponsor of the amendment in both houses urged the adoption of the bill as a "corollary" or as "supplemental" to the estate tax. Cong. Rec., Vol. 65, Part 3, pp. 3119–3120, 3122; Part. 4, p. 3172; Cong. Rec., Vol. 65, Part 8, pp. 8095, 8096.

The gift tax of 1924 was repealed when Congress, concurrently with the enactment of § 302 (c) of the Revenue Act of 1926, 44 Stat. 70, 125, 126, establishing a conclusive presumption that gifts within two years of death were made in contemplation of death and therefore subject to the estate tax. A gift tax was reënacted by § 501 of the Revenue Act of 1932, 47 Stat. 169, shortly after it was decided in *Heiner* v. *Donnan,* 285 U. S. 312, that the legislative enactment of such a presumption violated the Fifth Amendment.

Section 322 of the 1924 Act provides that when a tax has been imposed by § 319 upon a gift, the value of which is required by any provision of the statute taxing the estate to be included in the gross estate, the gift tax is to be credited on the estate tax. The two taxes are thus not always mutually exclusive as in the case of gifts made in contemplation of death which are complete and taxable when made, and are also required to be included in the gross estate for purposes of the death tax. But § 322 is without application unless there is a gift *inter vivos* which is taxable independently of any requirement that it shall be included in the gross estate. Property transferred in trust subject to a power of control over its disposition reserved to the donor is likewise required by § 302(d) to be included in the gross estate. But it does not follow that the transfer in trust is also taxable as a gift. The point was decided in the *Guggenheim* case where it was held that a gift upon trust, with power in the donor to revoke it is not taxable as a gift because the transfer is incomplete; and that the transfer whether *inter vivos* or at death becomes complete and taxable only when the power of control is relinquished. We think, as was pointed out in the *Guggenheim* case, *supra*, 285, that the gift tax statute does not contemplate two taxes upon gifts not made in contemplation of death, one upon the gift when a trust is created or when the power of revocation, if any, is relinquished, and another on the transfer of the same property at death because the gift previously made was incomplete.

---

Section 501 (c) of the 1932 Act added a new provision that transfers in trust, with power of revocation in the donor, should be taxed on relinquishment of the power. This was repealed by § 511 of the Act of 1934, 48 Stat. 680, because *Burnet* v. *Guggenheim*, 288 U. S. 280, had declared that such was the law without specific legislation. H. R. No. 704, 73rd Cong., 2d Sess., p. 40; Sen. Rep. No. 558, 73rd Cong., 2d Sess., p. 50.

It is plain that the contention of the taxpayer in this case that the gift becomes complete and taxable upon the relinquishment of the donor's power to revoke the trust cannot be sustained unless we are to hold, contrary to the policy of the statute and the reasoning in the *Guggenheim* case, that a second tax will be incurred upon the donor's relinquishment at death of his power to select new beneficiaries, or unless as an alternative we are to abandon our ruling in the *Porter* case. The Government does not suggest, even in its argument in the *Humphreys* case, that we should depart from our earlier rulings, and we think it clear that we should not do so both because we are satisfied with the reasoning upon which they rest and because departure from either would produce inconsistencies in the law as serious and confusing as the inconsistencies in administrative practice from which the Government now seeks relief.

There are other persuasive reasons why the taxpayer's contention cannot be sustained. By §§ 315(b), 324, and more specifically by § 510 of the 1932 Act, the donee of any gift is made personally liable for the tax to the extent of the value of the gift if the tax is not paid by the donor. It can hardly be supposed that Congress intended to impose personal liability upon the donee of a gift of property, so incomplete that he might be deprived of it by the donor the day after he had paid the tax. Further, § 321(b)(1) exempts from the tax, gifts to religious, charitable, and educational corporations and the like. A gift would seem not to be complete, for purposes of the tax, where the donor has reserved the power to determine whether the donees ultimately entitled to receive and enjoy the property are of such a class as to exempt the gift from taxation. Apart from other considerations we should hesitate to accept as correct a construction under which it could plausibly be maintained that a gift in trust

for the benefit of charitable corporations is then complete so that the taxing statute becomes operative and the gift escapes the tax even though the donor should later change the beneficiaries to the non-exempt class through exercise of a power to modify the trust in any way not beneficial to himself.

The argument of petitioner that the construction which the Government supports here, but assails in the *Humphreys* case, affords a ready means of evasion of the gift tax is not impressive. It is true, of course, that under it gift taxes will not be imposed on transactions which fall short of being completed gifts. But if for that reason they are not taxed as gifts they remain subject to death taxes assessed at higher rates, and the Government gets its due, which was precisely the end sought by the enactment of the gift tax.

Nor do we think that the provisions of § 219 (g) of the 1924 Act have any persuasive influence on the construction of the gift tax provisions with which we are now concerned. One purpose of the gift tax was to prevent or compensate for the loss of surtax upon income where large estates are split up by gifts to numerous donees.[2] Congress was aware that donors in trust might distribute income among several beneficiaries, although the gift remains so incomplete as not to be subject to the tax. It dealt with that contingency in § 219 (g) which taxes to the settlor the income of a trust paid to beneficiaries where he reserved to himself an unexercised power to "revest in himself title" to the trust property producing the income. Whether this section is to be read as relieving the donor of the income tax where the power reserved is to modify the trust, except for his own benefit, we do not now decide. If Congress, in enacting it, undertook to

---

[2] See references to Congressional Record, Footnote 1.

define the extent to which a reserved power of control over the disposition of the income is equivalent to ownership of it so as to mark the line between those cases on the one hand where the income is to be taxed to the donor and those on the other where, by related sections, the income is to be taxed to the trust or its beneficiaries, we do not perceive that the section presents any question so comparable to that now before us as to affect our decision. We are concerned here with a question to which Congress has given no answer in the words of the statute, and it must be decided in conformity to the course of judicial decision applicable to a unified scheme of taxation of gifts whether made *inter vivos* or at death. If Congress, for the purpose of taxing income, has defined precisely the amount of control over the income which it deems equivalent to ownership of it, that definition is controlling on the courts even though without it they might reach a different conclusion, and even though retention of a lesser degree of control be deemed to render a transfer incomplete for the purpose of laying gift and death taxes.

The question remains whether the construction of the statute which we conclude is to be derived from its language and history, should be modified because of the force of treasury regulations or administrative practice. Article I of Regulations 67, under the 1924 Act (adopted without any change of present significance in Article III, Regulations 79, under the 1932 Act) provides that the creation of a trust where the grantor retains the power to revest in himself title to the corpus of the trust does not constitute a gift subject to the tax and declares that "where the power retained by the grantor to revest in himself title to the corpus is not exercised, a taxable transfer will be treated as taking place in the year in which such power is terminated." Petitioner urges that

the regulation is in terms applicable to the trust presently involved because it was subject to a power of revocation in favor of the donor before the enactment of the gift tax which was later relinquished. But we think, as the court below thought, that the regulation was not directed to the case of the relinquishment of a reserved power to select new beneficiaries other than the donor and did not purport to lay down any rule for cases where there was a reserved power different from or in addition to the power to revest the title in the donor. At most the regulation is ambiguous and without persuasive force in determining the true construction of the statute. *Burnet* v. *Chicago Portrait Co.*, 285 U. S. 1, 16, 20. The amended regulation of 1936 under the 1932 Act, Art. III, Reg. 79, removed the ambiguity by declaring that the gift is complete and subject to the tax when "the donor has so parted with dominion and control as to leave in him no power to cause the beneficial title to be revested in himself." But this regulation is by its terms applicable only to gifts made after June 6, 1932, and is of significance here only so far as it is declaratory of the correct construction of the 1924 Act.

Petitioner also insists that the construction of the statute for which he contends is sustained by the administrative practice. That practice is not disclosed by any published Treasury rulings or decisions and our only source of information on the subject is a stipulation appearing in the record. It states that in the administration of the gift tax under the 1924 and 1932 Acts and until the decision in the *Hesslein* case it was "the uniform practice of the Commissioner of Internal Revenue in adjusting cases of the character of that here involved to treat the taxable transfer subject to gift tax as occurring when the transferor relinquished all power to revest in himself title to the property constituting the subject of

the transfer"; and that three hundred cases "of such character" have been closed or adjusted in conformity to this practice.

This definition of the practice appears as a part of a stipulation of facts setting forth in some 126 printed pages the original trust deed of December 24, 1913, and thirteen modifications of it between that date and the final relinquishment of the power of modification on August 20, 1924. They reveal a varied and extensive power of control by the donor over the disposition of the trust property which survived the relinquishment, in 1919, of the power of revocation for his own benefit, and with which he finally parted after enactment of the gift tax. The description of the practice as that resorted to in adjusting "cases of the character of that here involved," presupposes some knowledge on our part of what the signers of the stipulation regarded as the salient features of the present case which, although not specified by the stipulation, were necessarily embraced in the practice. Administrative practice, to be accepted as guiding or controlling judicial decision, must at least be defined with sufficient certainty to define the scope of the decision. If relinquishment of the power of revocation mentioned by the stipulation was of controlling significance in defining the practice, that circumstance was not present in the *Hesslein* case or in the *Humphreys* case. Whether in any of the three hundred cases mentioned in the stipulation the relinquishment of the power of revocation was followed by the relinquishment *inter vivos* of a power of changing the beneficiaries like that in this case, does not appear.

Such a stipulated definition of the practice is too vague and indefinite to afford a proper basis for a judicial decision which undertakes to state the construction of the statute in terms of the practice. Moreover, if we regard the stipulation as agreeing merely that the legal

questions involved in the present case have uniformly been settled administratively in favor of the contention now made by the petitioner, it involves conclusions of law of the stipulators, both with respect to the legal issues in the present case and those resolved by the practice. We are not bound to accept, as controlling, stipulations as to questions of law. *Swift & Co.* v. *Hocking Valley Ry. Co.*, 243 U. S. 281, 289.

Without attempting to say what the administrative practice has actually been we may, for present purposes, make the assumption most favorable to the taxpayer in this case that the practice was as stated by the Government in its brief in the *Humphreys* case, viz., that until the decision in the *Hesslein* case "the Bureau consistently took the position that the gift tax applied to a transfer in trust where the grantor reserved the right to modify the trust but no right to revest title in himself."

But the record here shows that no such practice was recognized as controlling in 1935 when the present case first received the attention of the Bureau. On February 21, 1935, the Assistant General Counsel gave an opinion reviewing at length the facts of the present case and the applicable principles of law, and concluded on the reasoning and authority of the *Guggenheim* and *Porter* cases that the gift was not complete and taxable until the relinquishment in August, 1924 of the power to modify the trust by the selection of new beneficiaries. In April, 1935, the matter was reconsidered and a new opinion was given which was finally adopted by the Assistant Secretary who had intervened in the case. This opinion reversed the earlier one on the authority of the *Guggenheim* case. It was at pains to point out that in that case the Court had held that the relinquishment of the power of revocation was a taxable gift but it made no mention of the fact that there, unlike the present case, there was no power of modification which survived the relinquishment of the

power of revocation, which was crucial in the *Porter* case. Neither opinion rested upon or made any mention of any practice affecting cases where such a power of modification is reserved. After the decision in the *Hesslein* case the ruling of the Bureau in this case was again reversed and notice of deficiency sent to the taxpayer.

From this record it is apparent that there was no established administrative practice before the opinion of April, 1935,[3] and if the practice was adopted then it was because of a mistaken departmental ruling of law based on an obvious misinterpretation of the decisions in the *Porter* and *Guggenheim* cases.

Administrative practice may be of persuasive weight in determining the construction of a statute of doubtful meaning where the practice does not conflict with other provisions of the statute and is not so inconsistent with applicable decisions of the courts as to produce inconsistency and confusion in the administration of the law. Such a choice, in practice, of one of two possible constructions of a statute by those who are expert in the field and specially informed as to administrative needs and convenience, tends to the wise interpretation and just administration of the laws. This is the more so when reliance has been placed on the practice by those affected by it.

But courts are not bound to accept the administrative construction of a statute regardless of consequences, even when disclosed in the form of rulings. See *Helvering* v. *New York Trust Co.*, 292 U. S. 455, 468. Here the practice has not been revealed by any published rulings or action of the Department on which taxpayers could have relied. The taxpayers in the present cases are contend-

---

[3] In the petition for certiorari filed in November, 1937, in *Hesslein* v. *Hoey* (No. 556), the Government asserted that the 300 cases referred to in the stipulation in this case had been decided so recently that the time for filing claims for refunds had not expired.

ing for different rulings. In Harriet Rosenau, 37 B. T. A. 468 (1938), as in the *Humphreys* case, the taxpayer contended that the date when the power to change the beneficiary is renounced is controlling. The petitioner here, who contends that the date of relinquishment of the power of revocation is controlling, rather than the date of surrender of power of modification, set up his trust and relinquished the power of revocation before the gift tax was enacted. The reënactment of the gift tax statute by the 1932 Act can not be said to be a legislative approval of the practice which had not been disclosed by Treasury regulation, ruling or decision, and which does not appear to have been established before the adoption of the 1932 Act. Cf. *McCaughn* v. *Hershey Chocolate Co.*, 283 U. S. 488, 492; *Massachusetts Mutual Life Ins. Co.* v. *United States*, 288 U. S. 269, 273; *Helvering* v. *New York Trust Co.*, 292 U. S. 455, 468.

The very purpose sought to be accomplished by judicial acceptance of an administrative practice would be defeated if we were to regard the present practice as controlling. If a practice is to be accepted because of the superior knowledge of administrative officers of the administrative needs and convenience, see *Brewster* v. *Gage*, 280 U. S. 327, 336, there is no such reason for its acceptance here. The Government by taking no position confesses that it is unable to say how administrative need and convenience will best be served. If, as we have held, we may reject an established administrative practice when it conflicts with an earlier one and is not supported by valid reasons, see *Burnet* v. *Chicago Portrait Co.*, 285 U. S. 1, 16, we should be equally free to reject the practice when it conflicts with our own decisions. A change of practice to conform to judicial decision, such as has occurred since the decision in the *Hesslein* case, or to meet administrative exigencies, will be accepted as controlling when consistent with our decisions. *Morrissey* v. *Com-*

*missioner*, 296 U. S. 344, 354. Here we have an added, and we think conclusive reason for rejecting the earlier practice and accepting the later. The earlier, because in sharp conflict with our own decisions, as we have already indicated, cannot be continued without the perpetuation of inconsistency and confusion comparable to that of which the Government asks to be relieved by our decision.

*Affirmed.*

MR. JUSTICE BUTLER took no part in the consideration or decision of this case.