EMILY COLES COLLINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107190. Promulgated February 18, 1943.

*George W. Witney, Esq.*, for the petitioner.
*R. S. Garnett, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $2,424.38 in gift tax for the calendar year 1937. The parties have filed a stipulation which is adopted as the findings of fact.

The petitioner filed a gift tax return for 1937 with the collector of internal revenue for the first district of New Jersey, in which she reported certain gifts to her children, excluded $5,000 on each, and claimed a specific exemption of $40,000. She reported that no net gifts had been made in preceding years.

The principal issue for decision is whether or not the petitioner in 1936 made a gift of $38,000 to a corporation called Arthur J. Collins Estate, Inc. This issue is material to the taxable year 1937 because if there was such a gift made in 1936 it would absorb a part of the specific exemption of $40,000, with the result that not all of that exemption would be available to offset the petitioner's gifts made in 1937. No other question is presented in regard to gifts in 1936 or 1937, but if this issue should be decided unfavorably to the petitioner, then other issues arise in regard to exclusions and exemptions.

The petitioner and her three adult children were the survivors of her husband, Arthur J. Collins, who died on April 22, 1930. These four persons, immediately following the death of Collins, formed a corporation known as Arthur J. Collins Estate, Inc. Collins, at the time of his death, was liable for debts in an amount exceeding $180,000. The petitioner transferred certain property of the estate of the deceased husband to the three children and they transferred that property to the new corporation. The petitioner also transferred a substantial amount of property to this corporation. The latter, in exchange for the property, issued 1,000 shares of its 6 percent cumulative $100 par value preferred stock and 25 shares of no par value common stock to the petitioner, and 25 shares of the common to each of the three children. There was no other stock of the corporation. Each share of stock had one vote in all matters. The creditors of the estate were made creditors of the corporation. The debts had not been paid off in October 1933, and, at that time, the creditors insisted that something be done to liquidate these debts. The corporation gave its notes for a large part of the debts and put up, as collateral, assets which it owned. The indebtedness was to be liquidated in three years from that date and the corporation actually paid off all of those debts on or before October 31, 1936, but it had to borrow $40,000 from a bank in order to do so.

The corporation had accumulated no earnings up to 1934. Its accumulated or earned surplus as of the close of 1934 was $20,425.38. It paid no dividends until after 1936. The undeclared dividends in arrears on the preferred stock amounted to $38,000 on December 31, 1936. The petitioner on that date executed a document which was as follows:

As holder of all the preferred stock of Arthur J. Collins Estate, Inc., I hereby waive any right I may have to any dividend which may be payable on said stock up to the date hereof. I am making this waiver because of the indebtedness and prior obligations of said company; and it is not practicable to declare a dividend on said stock since the assets of the company are pledged on account of said indebtedness.

The petitioner at all times material hereto was president of the corporation, and the directors were her three children and, for a part of the

time, the husband of one of the children. All of those persons knew and approved of the execution of the waiver.

The net income of the corporation for 1936 was $74,767.19.[1] Its opening and closing balance sheets for that year were as follows:

|  | Opening | Closing |
|---|---|---|
| *Assets* | | |
| Cash | $1,929.44 | $281.72 |
| Notes receivable | 2,774.02 | 871.14 |
| Accounts receivable | 6,760.37 | 5,000.00 |
| Investments: | | |
| Miami Beach Imp. Co | 1,201,560.32 | 1,201,560.32 |
| Miscellaneous assets | 118,000.65 | 39,267.15 |
| Total | 1,330,994.80 [Sic] | 1,246,980.33 |
| *Liabilities* | | |
| Notes payable to banks | $101,439.29 | $40,000.00 |
| Notes payable to others | 791.20 | |
| Due as guarantor | 35,000.00 | 35,000.00 |
| Due as endorsers | 6,074.73 | |
| Miscellaneous payables | 121.27 | 55.33 |
| Capital stock: | | |
| Preferred | 100,000.00 | 100,000.00 |
| Common | 1,030,715.23 | 1,030,715.23 |
| Surplus | 56,853.08 | 41,209.77 |
| Total | 1,330,994.80 | 1,246,980.33 |

The Commissioner determined that the petitioner made a gift of $38,000 to the corporation on December 31, 1936, by waiving the accumulated dividends on the preferred stock. He gave the following explanation:

It is held that the waiver executed by you on December 31, 1936, with respect to accumulated dividend arrearages on your preferred stock of Arthur J. Collins Estate, Inc. a corporation of which you and members of your family were the sole stockholders constituted a voluntary contribution of an equitable property interest having a fair market value of $38,000, which amount, less one exclusion of $5,000.00 was subject to gift tax for the year 1936. Of the total specific exemption of $40,000 an amount of $33,000.00 has therefore been allocated to the year 1936 and the balance of $7,000.00 allowed in computing your net gifts for the year 1937.

If the issue relating to a gift to the corporation is decided adversely to the Commissioner, there is no other issue in the case requiring decision. But if it should be decided adversely to the petitioner, then other issues arise, relating to exclusions and exemptions.

This case raises several interesting and difficult questions. One is whether there might have been consideration for the act of the petitioner in the added security which it gave the stock retained by her. However, pursuit of the answer to that question would lead to no satisfactory result, since section 503 of the Revenue Act of 1932 provides that, where property is transferred for less than full consideration in money's worth, the excess of the value of the property over the consid-

[1] The stipulation does not explain how the corporation could start the year with a surplus of $56,853.08, earn $74,767.19 during the year, and have a surplus of $41,209.77 at the end of the year.

eration. shall be deemed a gift, and here there is no showing of any values. The corporation took no action in regard to this so-called waiver, and the question arises as to whether it was binding upon the petitioner, had she chosen later to revoke it.

The petitioner also argues that she had no intention to make a gift. The respondent agrees that one of the essentials of a taxable gift is a donative intent. See Regulations 79, arts. 1 and 2. *Noel* v. *Parrott*, 15 Fed. (2d) 669, 671; certiorari denied, 273 U. S. 754; *Edson* v. *Lucas*, 40 Fed. (2d) 398, 404; *Blanche S. Ross*, 28 B. T. A. 39; appeal dismissed, 67 Fed. (2d) 989; *Park Chamberlain*, 41 B. T. A. 10, 17; appeal dismissed Oct. 31, 1940. An intent to do what was done may be inferred from the actual doing, but the question remains as to whether or not that intent was donative in character. "If a creditor cancels a portion of the indebtedness in order to salvage something, it seems clear that donative intent is not at work." Federal Estate and Gift Taxation, by Randolph E. Paul, p. 1092. The above authorities indicate that a transfer to be donative in character must be made for altruistic reasons, out of pure generosity or solicitude for the welfare of the recipient rather than for some selfish reasons as, for example, a business benefit which the transferor may hope to receive. Cf. *Augustus E. Staley*, 41 B. T. A. 752, 758; appeal dismissed Dec. 21, 1940; *American Dental Co.*, 44 B. T. A. 425; reversed 128 Fed. (2d) 254; certiorari granted, 317 U. S. 612. That is, the act may be prompted entirely by anticipated business benefits which negative a donative intent.

The petitioner says in her brief that her husband died shortly after the market crash of the fall of 1929; he owed substantial amounts which his estate was unable to pay immediately; the corporation was organized within a week after his death; the purpose of organizing was to conserve his estate and to pay off his debts without sacrifice of assets; the corporation was unable to make any progress for several years, but succeeded in paying off some of the more insistent creditors by the close of 1936; it was required to borrow $40,000 from a bank in order to do this, and it also had another obligation of $35,000; and, under these circumstances, she executed the waiver at the close of 1936 because, as she stated in the waiver, she realized that the corporation was not in position to declare dividends on the preferred stock, and her purposes would be best served by permitting it to discharge those debts before it would have to pay any dividends on the preferred stock. The preponderance of the evidence supports this contention of the petitioner. While some further explanation of the nature of the assets might have showed that payment of the dividends on the preferred was impracticable and thus improved the petitioner's case, nevertheless, the reason given in her waiver is not unsupported or improbable. Furthermore, the respondent fails to point out any

weakness in her argument. The petitioner compares her situation to that of creditors who fail to make full demand for interest or other amounts due them in the hope that thereby the debtors will become strong enough to meet their remaining and future obligations fully. She argues that such actions spring from purely selfish business motives and that donative intent is absent. Her case is somewhat stronger than the cases which she describes. She was not a creditor of the corporation. Her rights in regard to these dividends were incomplete and inchoate, at least until the directors saw fit to declare them, or without good reason, refused to declare them. A lack of donative intent is established by a fair preponderance of the evidence.

The gift tax is imposed upon the "transfer" "of property by gift." Sec. 501 (a). The preferred stock entitled the petitioner to annual cumulative dividends of 6 percent, "as and when declared by the Board of Directors," out of surplus or net profits before any dividends could be paid or before any distribution in liquidation could be made to the common stockholders. But the corporation had never declared any dividends on the preferred stock and the petitioner had no present right to receive any of the dividends in arrears. This is so even though the corporation had a book surplus at the end of the year in excess of the amount of those dividends and even though a preferred stockholder has a right in equity to require the corporation to declare dividends if it is in a position to do so. Undeclared dividends in arrears on preferred stock are not reflected in the books of a corporation as a liability under good accounting practices, although some notation may be made in regard to them. Finney, Principles of Accounting, vol. 2, ch. 6, p. 7; Accountants' Handbook, 2d Ed., p. 878. Thus, this act of the petitioner did not release any assets, reduce liabilities, or increase surplus of the corporation. The "waiver" was of something not yet done which might never be done. It is stated in Fletcher, Private Corporations, vol. 2, p. 786, that "Prior to the declaration of a dividend, the right of the stockholder to a share of the earnings is not property * * *." The right which the petitioner had could not be transferred without change to the corporation, since the latter could have no right against itself for undeclared dividends.

We conclude for the reasons above indicated that there was not in this case a transfer of property by gift to the corporation within the meaning of section 501 (a). Cf. *Frank B. Thompson*, 42 B. T. A. 121, where a stockholder transferred cash and securities to the corporation. The issues relating to exclusions and exemptions need not be decided.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

SMITH, STERNHAGEN, and ARNOLD, *JJ.*, concur only in the result.

610

MELLOTT, *J.*, dissenting: The corporation is a personal holding company. In 1936 petitioner owned all of its preferred stock (which had full voting rights) and one-fourth of its common, her three children owning the remainder of the common. The corporation's net income for 1936 was approximately double the amount of "cumulative" dividends on the preferred stock and its earned surplus was ample to pay all of them. Petitioner, by reason of her voting power, was in a position where she could have collected the accumulated dividends if she had chosen to do so. She elected to waive them. Whether she did so because she intended to equalize the ownership of the stock of the corporation through gifts of three-fourths of the preferred stock to her children during the next year, as actually eventuated, or whether she desired to make three-fourths of the earnings of the corporation available to her children as the owners of the common stock, it is clear that her waiver benefited them. The net result as to the dividends was no different than it would have been if, retaining the stock, she had collected the dividends and given them to her children; or if she had delivered the stock to them and they had collected the dividends; or if she had retained both and passed them to her children at death.

\* \* \* The gift tax was supplementary to the estate tax. The two are in *pari materia* and must be construed together. \* \* \* An important, if not the main purpose of the gift tax was to prevent or compensate for avoidance of death taxes by taxing the gifts of property *inter vivos* which, but for the gifts, would be subject in its original or converted form to the tax laid upon transfers at death. [*Sanford's Estate* v. *Commissioner*, 308 U. S. 39.]

This tribunal has previously recognized that a gift to a corporation "would benefit proportionately" shareholders other than the one making the gift. "As to them, particularly members of the transferor's family, there is no reason to disregard the gift theory." *Robert H. Scanlon*, 42 B. T. A. 997, 999. Congress may well have had in mind such a situation as is shown in the presently stipulated facts when it included, as one example of the sort of transactions it intended to tax, "(2) a transfer by A to a corporation owned by his children," which, it said, "would constitute a gift to the children." (H. Rept. No. 708, 72d Cong., 1st sess., pp. 27–28; S. Rept. No. 665, 72d Cong., 1st sess., pp. 39–40.) Since petitioner can not be said to have made a gift to herself under the rationale of the *Scanlon* case, I would hold—looking at realities—that she made gifts to her three children equivalent to 75 percent of the amount of the dividends waived. She, of course, would be entitled to three exclusions of $5,000, *Helvering* v. *Hutchings, supra,* and to elect whether she would claim any statutory exemption for 1936. Cf. *Lunsford Richardson*, 39 B. T. A. 927; affirmed on this point, 126 Fed. (2d) 562; *Lawrence C. Phipps*, 43 B. T. A. 1010; affd., 127 Fed. (2d) 214.

OPPER, *J.*, agrees with this dissent.