ROBERT W. CHAMBERS, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 10188-83, 10189-83, 10190-83, 10191-83.

Filed July 28, 1986.

*Richard L. Braunstein, Bernard J. Long, Jr., Albert H. Turkus, Joyce T. Gwadz,* and *Stuart A. Sheldon,* for the petitioners.

*Sara M. Coe,* for the respondent.

---

[1]Cases of the following petitioners are consolidated herewith: Garner Anthony, docket No. 10189-83; Barbara Cox Anthony, docket No. 10190-83; and Anne Cox Chambers, docket No. 10191-83.

## OPINION

STERRETT, *Chief Judge*: These consolidated cases are before the Court on petitioners' motion for summary judgment filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure.

In his statutory notices of deficiency dated February 3, 1983, respondent determined deficiencies in petitioners' Federal gift taxes as follows:

| Docket No. | Petitioner | Calendar year ended Dec. 31— | Deficiency |
|---|---|---|---|
| 10188-83 | Robert W. Chambers | 1976 | $25,247.33 |
| 10189-83 | Garner Anthony | 1976 | 11,130.34 |
| 10190-83 | Barbara Cox Anthony | 1976 | 10,319.96 |
| | | 1977 | 82.25 |
| | | 1978 | 27,931.65 |
| | | 1979 | 28,719.90 |
| 10191-83 | Anne Cox Chambers | 1976 | 25,247.33 |
| | | 1977 | 46,243.10 |
| | | 1978 | 77,795.65 |
| | | 1979 | 82,754.09 |

The sole issue to be decided in determining whether petitioners are entitled to prevail on their motion is whether certain transfers made on December 12, 1975, by petitioners Anne Cox Chambers and Barbara Cox Anthony to various trusts were completed as of that date for Federal gift tax purposes.[2]

Petitioners Robert W. Chambers and Anne Cox Chambers resided in Atlanta, Georgia, and petitioners Garner Anthony and Barbara Cox Anthony resided in Honolulu, Hawaii, at the time their petitions were filed in this case. During the calendar years in issue, petitioners Robert W. Chambers and Anne Cox Chambers filed their Federal gift tax returns with the Internal Revenue Service in Atlanta, Georgia, and petitioners Garner Anthony and Barbara Cox Anthony filed their Federal gift tax returns with the Internal Revenue Service in Fresno, California.

---

[2] The deficiencies determined by respondent against Robert W. Chambers and Garner Anthony result solely from the fact that each consented to the attribution to him for Federal gift tax purposes of one-half of any and all gifts made by his spouse during the 1976 calendar year.

Cox Enterprises, Inc. (hereinafter CEI), is a Delaware corporation that was incorporated on December 13, 1968. CEI's original capitalization consisted of 500,000 shares of voting common stock with a par value of $1 per share. As of December 12, 1975, CEI had issued and outstanding 402,319 shares of voting common stock and the majority of these shares was held by the following three trusts:[3]

| Shareholder | Number of shares | Percentage |
|---|---|---|
| Atlanta Trust I | 105,946 | 26.33 |
| Atlanta Trust II | 105,946 | 26.33 |
| Dayton Trust | 155,957 | 38.76 |
| | | 91.42 |

The remaining 8.58 percent of voting common stock was held by numerous other unrelated shareholders.

As of December 12, 1975, petitioner Anne Cox Chambers was the owner of an 87.6628-percent interest in the life estate of the Atlanta Trust I, petitioner Barbara Cox Anthony was the owner of a 73.3043-percent interest in the life estate of the Atlanta Trust II, and they each owned a 48.1203-percent interest in the life estate of the Dayton Trust.[4] As life estate beneficiaries, petitioners were entitled to the dividends and distributions with respect to the stock, which included the CEI stock, that made up the corpus of the respective trusts.

As of December 12, 1975, petitioner Barbara Cox Anthony was the trustee of the Atlanta Trust I, petitioner Anne Cox Chambers was the trustee of the Atlanta Trust II, and both such petitioners as well as Robert W. Sherman, an unrelated party, were the co-trustees of the Dayton Trust. As the trustee of the Atlanta Trust I, petitioner Barbara Cox Anthony had the power to vote the CEI stock held by that trust and, as the trustee of the Atlanta Trust II, petitioner Anne Cox Chambers had the power to vote the CEI stock held by that trust. Each such petitioner, as one of three co-trustees of the Dayton Trust, had the power

---

[3] The settlor of all three trusts was James M. Cox, who was the father of petitioners Anne Cox Chambers and Barbara Cox Anthony. While the settlor did not name the trusts, we so designated them for purposes of clarity.

[4] Daniel J. Mahoney, Jr., and J. Michael Mahoney, who are unrelated to petitioners, owned the remaining 3.759-percent interest in the life estate of the Dayton Trust. With respect to the Atlanta Trust I and the Atlanta Trust II, the record does not disclose who owned the remaining percentage interests in the life estates.

to participate in the voting of the CEI stock held by that trust.

On December 12, 1975, two events occurred. First, the board of directors of CEI, of which petitioners comprised four of the seven members, and the stockholders of CEI approved a change in the capital structure of CEI. CEI's certificate of incorporation was amended to increase the capital stock of the corporation to 3 million shares of $1 par value common stock, which was divided into 2,900,000 shares of voting common stock and 100,000 shares of nonvoting common stock. These shares of voting and nonvoting common stock were distributed to CEI's shareholders on a pro rata basis in exchange for the previously issued voting common stock. The shares held by the three trusts after the distribution were as follows:[5]

| Shareholder | Voting shares of common stock | | Nonvoting shares of common stock | |
|---|---|---|---|---|
| | Number | Percentage | Number | Percentage |
| Atlanta Trust I | 635,676 | 26.33 | 21,189 | 26.33 |
| Atlanta Trust II | 635,676 | 26.33 | 21,189 | 26.33 |
| Dayton Trust | 935,742 | 38.76 | 31,191 | 38.76 |

Second, petitioners Barbara Cox Anthony and Anne Cox Chambers established five trusts for the benefit of their respective children, a separate trust being established for each child. The term of each trust was 10 years and 1 month, beginning December 12, 1975, except that if the grantor or the beneficiary of a trust died before the end of the term, the trust would then terminate. Each such petitioner, as grantor, named herself as trustee with respect to the trusts benefiting her children. On December 12, 1975, petitioners Barbara Cox Anthony and Anne Cox Chambers also transferred to the respective trusts (hereinafter Clifford Trusts) undivided interests in their respective life estates under the Atlanta Trust I and the Atlanta Trust II.[6] Such interests entitled the respective Clifford Trusts to the dividends, distributions, and income from a specified per-

---

[5] The record does not indicate whether any shares of stock were subsequently transferred by any of CEI's shareholders and we proceed on the assumption that no such transfers occurred during the calendar years in issue.

[6] Petitioner Anne Cox Chambers transferred a total of 70.11 percent of her life estate interest in the nonvoting common stock and petitioner Barbara Cox Anthony transferred a total of 35.05 percent of her life estate interest in the nonvoting common stock.

centage interest in the nonvoting common stock of CEI owned by the Atlanta Trust I or the Atlanta Trust II.

For the years 1976 through 1979, the following table sets forth the dividends that were declared, and subsequently paid, with respect to the voting and nonvoting common stock of CEI:

| Date dividend declared[7] | Voting common stock dividend | Nonvoting common stock dividend |
|---|---|---|
| 12/14/76 | $1,013,844 | $1,407,998 |
| 12/08/77 | 1,013,844 | 1,407,998 |
| 12/14/78 | 1,013,844 | 1,407,998 |
| 12/12/79 | 1,062,122 | 1,480,409 |

For the years 1976 through 1979, two independent appraisal firms provided appraisals with respect to the value of the CEI stock. The following table sets forth the value per share of the nonvoting common stock of CEI and the effective yield of such stock on the basis of the dividends declared during the calendar year in which the appraisals were made:

| Date of appraisals | Value per share of CEI nonvoting common stock based on average appraisals[8] | Yield |
|---|---|---|
| 12/31/76 | $166.47 | 10.3 |
| 12/31/77 | 198.84 | 8.6 |
| 12/31/78 | 236.28 | 7.1 |
| 12/31/79 | 274.79 | 6.4 |

On or around March 15, 1976, Federal gift tax returns were filed reporting the December 12, 1975, transfers to the Clifford Trusts, and substantial gift taxes were paid. In his respective statutory notices of deficiency, respondent determined that petitioners' assignments of interests in the Atlanta Trust I and the Atlanta Trust II to the respective Clifford Trusts on December 12, 1975, did not constitute completed transfers. Respondent's position is that such transfers were completed when the dividends were declared on CEI's nonvoting common stock in December 1976, 1977, 1978, and 1979, and that Federal gift taxes are due on those transfers.

---

[7] The record does not indicate the respective dividend's date of record, and we proceed on the assumption that the various dates of record occurred during the same calendar year in which the respective date of the dividend declaration occurred.

[8] Respondent did not challenge the appraisal values.

Under section 2501,[9] a tax is imposed on the transfer by an individual of property by gift. Section 2511 provides that the tax applies to direct or indirect transfers of all tangible and intangible property, whether in trust or otherwise. While the Internal Revenue Code does not define when a transfer becomes complete for gift tax purposes, section 25.2511-2(b), Gift Tax Regs., does elaborate on its meaning and provides in part as follows:

As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change its disposition, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over its disposition, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. * * *

Petitioners, as the parties moving for summary judgment, have the burden of proving that no genuine issue exists with respect to any material fact and that they are entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Gulfstream Land & Development Corp. v. Commissioner*, 71 T.C. 587, 596 (1979). Petitioners also have the burden of proof with respect to the deficiency determinations made in respondent's statutory notices. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.

Respondent takes the position that the transfers were not completed in 1975 because petitioners, each or together, had the power to exercise voting control over CEI and that this control constituted a "reserve power" of "dominion and control" over the transferred interests in the CEI nonvoting common stock. Petitioners maintain that, notwithstanding respondent's argument, the December 12, 1975, transfers to the Clifford Trusts were completed gifts as a matter of law and they rely primarily on *United States v. Byrum*, 408 U.S. 125 (1972), an estate tax case involving section 2036, as support for their contention.

This is a razor's-edge case.

---

[9] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the calendar years in issue.

We note at the outset that it is well established that the estate and gift taxes are to be read in pari materia and are to be construed together. *Estate of Sanford v. Commissioner*, 308 U.S. 39, 44 (1939); *Merrill v. Fahs*, 324 U.S. 308, 311-313 (1945); *Carson v. Commissioner*, 71 T.C. 252, 260 (1978), affd. 641 F.2d 864 (10th Cir. 1981). Specifically, in *Estate of Sanford v. Commissioner*, the Supreme Court stated at page 44:

> There is nothing in the language of the [gift tax] statute, and our attention has not been directed to anything in its legislative history to suggest * * * that *the test of the completeness of the taxed gift was to be any different from that to be applied in determining whether the donor has retained an interest such that it becomes subject to the estate tax upon its extinguishment at death.* The gift tax was supplementary to the estate tax. The two are in pari materia and must be construed together. [Emphasis added.]

With that precept in mind, we proceed to examine the Supreme Court's decision in *United States v. Byrum, supra.*

In *Byrum*, the decedent transferred stock in three unlisted corporations, in which he was the majority stockholder, to an irrevocable trust for the benefit of his children. He retained in his individual capacity the right to vote the transferred stock, veto any transfer by the trustee, and appoint another corporate trustee as successor. The retained right to vote the transferred stock, together with the vote of the stock that the decedent owned at the time of his death, gave him a majority vote in each of the corporations.

Following the decedent's death, the Commissioner determined that the transferred stock was includable in his gross estate under either section 2036(a)(2) or (a)(1).[10] In specific, the Commissioner asserted that the rights the decedent retained with respect to the transferred stock, particularly the right to vote the transferred stock, were such that the decedent retained control over corporate dividend policy through his right to select the board of directors and therefore could regulate the flow of income to the trust. Thus, the Commissioner maintained that he had the power

---

[10] Sec. 2036(a) provided for the inclusion in a decedent's gross estate of all property which the decedent had transferred inter vivos if the decedent retained for his lifetime "(1) the possession or enjoyment of, or the right to the income from, the property" transferred, or "(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

to shift or defer the beneficial enjoyment of the trust income between the present beneficiaries and remainderman and that this power amounted to the right to designate the persons who shall enjoy the income from the transferred property. In addition, the Commissioner argued that, by reason of his retained control over the corporation, the decedent had the right to continue to benefit economically from the transferred shares during his lifetime.

The Supreme Court rejected the Commissioner's contentions and found that the rights the decedent reserved with respect to the transferred stock did not constitute retained enjoyment thereof or the right to designate the person or persons who enjoy the income therefrom. In support of its conclusion, the Court repeatedly emphasized the fiduciary duties of a majority shareholder and of the directors of a corporation. The Court stated that a majority shareholder has a fiduciary duty not to misuse his power by promoting his personal interests at the expense of corporate interests, and that the directors of a corporation have the fiduciary duty not to play favorites among the shareholders but rather must promote the interests of the corporation as a whole. The Court also stated that the business and economic vicissitudes of corporate existence and other diverse factors, such as the corporation's capital needs, the possibility of shareholder derivative suits to compel the payment of dividends, and the accumulated earnings tax of section 531, have a significant impact on the determination of a corporation's dividend policy by its board of directors. The Court held that these duties and factors so qualified the retained rights of the decedent that they were insufficient to cause inclusion of the stock in the decedent's gross estate under section 2036(a).

Since section 2036(a) reflects a "legislative policy of subjecting to tax all property which has been the subject of an incomplete inter vivos transfer" (*United States v. O'Malley*, 383 U.S. 627, 631 (1966)), it follows from the Supreme Court's analysis in *Byrum* that the decedent in that case had made a completed inter vivos transfer of the stock into trust.[11] Petitioners maintain that, since the

---

[11] See also our discussion of *Estate of Sanford v. Commissioner*, 308 U.S. 39, 44 (1939), *supra*, p. 9.

estate and gift taxes are to be read in pari materia, the *Byrum* case is dispositive of the instant case and that, as a matter of law, petitioners' right to vote the CEI stock did not render the December 12, 1975, transfers to the Clifford Trusts incomplete for gift tax purposes. We agree with petitioners.[12]

Respondent maintains that *Byrum* is distinguishable from the instant case. He argues that the decedent in *Byrum* parted with a substantial interest in property, the stock, whereas in the instant case petitioners only parted with an interest in their respective life estates. It seems to us that respondent is suggesting that, in determining whether a completed transfer has occurred for gift tax purposes, there is a difference between transfers of an entire interest in property and transfers of a partial interest in property. We do not agree, nor do his own regulations. Section 25.2511-1(e), Gift Tax Regs., provides in relevant part as follows:

If a donor transfers by gift less than his entire interest in property, the gift tax is applicable to the interest transferred. The tax is applicable, for example, * * * to the transfer of a life estate when the grantor retains the remainder interest * * *

Thus, it is clear that assignments of interests in life estates are transfers for gift tax purposes. See *Hrobon v. Commissioner*, 41 T.C. 476, 492-500 (1964)(life tenant's gift of, inter alia, the value of 40 percent of trust income); *Fuller v. Commissioner*, 37 T.C. 147, 152-155 (1961)(widow's renunciation of part of her life interest in estate).

Furthermore, it should be remembered that petitioners, in their individual capacities, had life estate interests in the Atlanta Trust I and the Atlanta Trust II that entitled them only to the income generated by the respective trusts. Thus, with respect to their transfers to the Clifford Trusts, they parted with their entire interests in the transferred property. No strings were attached to these transfers whereas in *Byrum* the decedent parted with the voting stock he

---

[12] We note that Congress, in response to *United States v. Byrum*, 408 U.S. 125 (1972), made admendments to section 2036. Since such amendments are effective for transfers after June 22, 1976, they are not applicable to the transfers which occurred on December 12, 1975. There also might be a question with respect to whether sec. 2036, as amended, would apply to facts similar to those in this case. S. Rept. 95-745, at 89, 91 (1978).

transferred into trust but retained the right to vote such stock. This difference further strengthens petitioners' case.

While petitioners did have the right to vote a certain percentage of the CEI stock, this right arose solely from the fact that they were trustees of the various trusts. As trustees, they were under a fiduciary obligation to the beneficiaries of the trusts. Thus, any influence petitioners might have had over the nonvoting stock interests transferred to the Clifford Trusts was no greater than those powers of trust administration and management that the gift tax allows to a donor-trustee. Section 25.2511-2(g), Gift Tax Regs., provides:

If a donor transfers property to himself as trustee (or to himself and some other person, not possessing a substantial adverse interest, as trustees), and retains no beneficial interest in the trust property and *no power over it except fiduciary powers*, the exercise or nonexercise of which is limited by a fixed or ascertainable standard, to change the beneficiaries of the transferred property, *the donor has made a completed gift* and the entire value of the transferred property is subject to the gift tax. [Emphasis added.]

In addition, petitioners, as directors of CEI, had the fiduciary duty to promote the interests of the corporation as a whole. Because of this fiduciary duty, as well as the fiduciary duty as trustees, petitioners were subject to fiduciary constraints similar to the ones found dispositive in *Byrum*.

In opposing petitioners' motion, respondent relies solely on *Overton v. Commissioner*, 6 T.C. 304 (1946), affd. 162 F.2d 155 (2d Cir. 1947), for the proposition that the transfers were not completed in 1975. In *Overton*, two taxpayers restructured a corporation that they controlled and transferred newly issued, nonvoting common stock of the corporation to their wives. The value of the transferred stock was nominal as the liquidation value of the new nonvoting shares was set at $1 per share and the shares were subject to a shareholder agreement restricting their resale price to $1 per share. The taxpayers did not file gift tax returns with respect to the transferred nonvoting common stock on the basis that the restrictions on the liquidation value and resale price of the shares rendered the value of such shares to be only $1 per share. Despite the

nominal value accorded to the nonvoting common stock by the taxpayers, the dividends received with respect to such stock were grossly disproportionate to the stock's value.

Respondent attacked the transaction on the ground that the amounts formally designated as dividends on the nonvoting common stock were in fact attributable to the voting common stock of the corporation. This Court agreed with respondent. Noting that the dividends received with respect to nonvoting common stock were grossly disproportionate to the stock's value, we held that the property that earned the large dividends received by the taxpayers' wives was, in reality, the voting common stock held by the taxpayers. In affirming the decision, the Second Circuit found that the taxpayers in actuality gave their wives nothing of value, or substantially nothing, and that, with respect to one of the taxpayers, he made gifts to his wife of the dividend income earned on his voting common stock.

Respondent's reliance on *Overton* is misplaced because, unlike the situation in *Overton*, petitioners actually transferred interests in their respective life estates to the respective Clifford Trusts. In fact, respondent implicitly concedes that fact with his contention that gifts are made when the dividends are declared; some interest must have been transferred with respect to which the dividends were declared. In addition, these interests had a substantial value as evidenced by the independent appraisals made with respect to the nonvoting common stock and the substantial gift taxes that were paid by petitioners with respect to their transfer. Respondent has not challenged the valuation as such. It also should be noted that the dividends received with respect to the nonvoting common stock were reasonable in relation to the stock's value, whereas in *Overton*, it was grossly disproportionate.[13] Furthermore, it should be mentioned that this Court, as well as the Second Circuit, in *Overton* was not faced with the question of whether voting control over a corporation, which is constrained by fiduciary duties, renders a transfer of nonvoting stock interests of

---

[13] We further note that respondent made no argument in this case with respect to the relative amount of dividends received on the voting and nonvoting common stock.

that corporation an incomplete gift for gift tax purposes.[14] Finally, *Overton* was decided before *Byrum*, so we are not required to decide whether *Overton* was sub silentio overruled by *Byrum*.

For the above-stated reasons, we grant petitioners' motion for summary judgment.

> *Appropriate orders and decisions will be entered.*

---

[14] This Court has held that under similar circumstances, the transfer is a completed gift for purposes of the charitable contribution deduction pursuant to sec. 170. *Pullman v. Commissioner*, T.C. Memo. 1964-218.