IRWIN UNION BANK AND TRUST COMPANY, PHILIP W. LONG
*v.* VICTORY B. LONG.

[No. 1-873A150.  Filed June 25, 1974.]

*Alan H. Lobely, James S. Telfer, D. Robert Webster, Ice Miller Donadio & Ryan,* of Indianapolis, for appellant Irwin Union Bank & Trust Co.

*Cline, King & Beck,* of Columbus, for appellee.

LOWDERMILK, J.—On February 3, 1957, Victoria Long, appellee herein, obtained a judgment in the amount of $15,000 against Philip W. Long, which judgment emanated from a divorce decree. This action is the result of the filing by appellee of a petition in proceedings supplemental to execution on the prior judgment. Appellee sought satisfaction of that judgment by pursuing funds allegedly owed to Philip W. Long as a result of a trust set up by Laura Long, his mother.

Appellee alleged that the Irwin Union Bank and Trust Company (Union Bank) was indebted to Philip W. Long as the result of its position as trustee of the trust created by Laura Long. On April 24, 1969, the trial court ordered that any income, property, or profits, which were owed to Philip Long and not exempt from execution should be applied to the divorce judgment. Thereafter, on February 13, 1973, the trial court ordered that four percent (4%) of the trust corpus of the trust created by Laura Long which benefited Philip Long was not exempt from execution and could be levied upon by appellee and ordered a writ of execution. Union Bank, as trustee, filed its motion to set aside the writ of execution. Said motion was overruled by the trial court, whereupon Union Bank filed its motion to correct errors, which was by the court overruled.

The pertinent portion of the trust created by Laura Long is as follows, to-wit:

## "ITEM V C

"Withdrawal of Principal.

When Philip W. Long, Jr. has attained the age of twenty-one (21) years and is not a full-time student at an educational institution as a candidate for a Bachelor of Arts or Bachelor of Sciences degree, Philip W. Long shall have the right to withdraw from principal once in any calendar year upon thirty (30) days written notice to the Trustee up to four percent (4%) of the market value of the entire trust principal on the date of such notice, which right shall not be cumulative; provided, however, that the amount distributable hereunder shall not be in excess of the market value of the assets of the trust on the date of such notice other than interests in real estate."

The primary issue raised on this appeal is whether the trial court erred in allowing execution on the 4% of the trust corpus.

Appellant contends that Philip Long's right to withdraw 4% of the trust corpus is, in fact, a general power of appointment. Union Bank further contends that since Philip Long has never exercised his right of withdrawal, pursuant to the provisions of the trust instrument, no creditors of Philip Long can reach the trust corpus. Appellant points out that if the power of appointment is unexercised, the creditors cannot force the exercise of said power and cannot reach the trust corpus in this case.

Appellee posits that the condition precedent to Philip Long's right of withdrawal has been met and therefore Philip Long has an absolute right to the present enjoyment of 4% of the trust corpus simply by making a written request to the trustee. Appellee contends that this is a vested right and is consistent with the intentions of the donor, Laura Long. Appellee further contends in her brief that the right of withdrawal is not a power of appointment, but is, rather, a power of augmentation and relies upon the Restatement of the Law of Property, § 318, which reads as follows, to-wit:

"Definition—Power of Appointment.

(1) Except as stated in Subsection (2), a power of appointment, as the term is used in this Restatement, is a power created or reserved by a person (the donor) having property subject to his disposition enabling the donee of the power to designate, within such limits as the donor may prescribe, the transferees of the property or the shares in which it shall be received.

(2) The term power of appointment does not include a power of sale, a power of attorney, a power of revocation, a power to cause a gift of income to be augmented out of principal, a power to designate charities, a charitable trust, a discretionary trust, or an honorary trust."

However, in oral argument, appellee stated that the label that is put on the provision of the trust instrument is immaterial.

It is the position of appellee that if the right of withdrawal is not a power of appointment under § 318, *supra,* then the cases and authorities relied upon by appellant which relate to powers of appointment will not be in point.

Appellee also argues that Philip has absolute control and use of the 4% of the corpus and that the bank does not have control over that portion of the corpus if Philip decides to exercise his right of withdrawal. Appellee argues that the intention of Laura Long was to give Philip not only an income interest in the trust but a fixed amount of corpus which he could use as he saw fit. Thus, Philip Long would have a right to the present enjoyment of 4% of the trust corpus. A summation of appellee's argument, as stated in her brief, is as follows: "So it is with Philip—he can get it if he desires it, so why cannot Victoria get it even if Philip does not desire it?"

We have had no Indiana authority directly in point cited to us by either of the parties and a thorough research of this issue does not reveal any Indiana authority on point. Thus, this issue so far as we can determine is one of first impression in Indiana.

The distinction which appellee seeks to rely upon based on the Restatement of the Law of Property in regard to a power of augmentation is apparently such a distinction only in that authority. We have found no cases or treatises which follow the distinction made in the Restatement. We have found one treatise which expressly refutes the distinction between a power of appointment and a power of augmentation, as set out in the Restatement. Appleman, Basic Estate Planning, Ch. XVI, p. 696, discusses the Restatement distinction as follows:

> "The 'Definitions' section of the Restatement of the Law of Property says: 'The term power of appointment does not include * * * a power of revocation, a power to cause a gift of income to be augmented out of principal, * * * a discretionary trust * * *.' Today, for estate and gift tax purposes and consequently for estate planning purposes, this statement must be virtually disregarded."

Further, appellee has failed to point out exactly how the distinction made in the Restatement would affect the case at bar. Appellee cites no authority which says that an unexercised power of augmentation can be reached by creditors.

Appellant, for the sake of argument, conceded that even if the trust language was a power of augmentation, the same rules would be in effect in this case as they would apply to creditors.

Broadly speaking, a power is said to be general if it can be exercised in favor of anyone whom the donee may select. A power is defined in Thompson on Real Property, 1961 Repl., Future Interests, § 2025, as follows:

> "§ 2025. What a 'power' is.—Broadly stated, a 'power' is an authority enabling one person to dispose of an interest which is vested in another. It is an authority reserved by or limited to one to do certain acts in relation to the subject matter of the gift for his own benefit or for the benefit of another. The word 'power,' as defined by the Restatement of the Law of Property, 'is an ability on the part of a person to produce a change in a given legal relation by doing or not doing a given act.' It is an authority to do some act in

relation to lands, or the creation of estates therein, or of charges thereon, which the owner granting or reserving such power, might himself lawfully perform.

\* \* \*

Powers are either general or special. They are general when they are capable of being exercised by the donee in favor of any person, including himself, and are not restricted as to the estate or interest over which he may exercise the power, while the power is special if its exercise is restricted to particular persons, or a particular class of persons, or if it can be exercised only for certain named purposes or under certain conditions. The donee under a general power has an absolute disposing power over the estate; but where he cannot exercise the power for his own benefit during his lifetime, the power is not general. . . ."

In the case of *In re Kuttler's Estate* (1958), 325 P.2d 624, 628, 629, power of appointment was defined as follows:

" 'A power of appointment, which may be created by deed or by will, is defined, generally, as a power or authority given to a person to dispose of property, or an interest therein, which is vested in a person other than the donee of the power.' "

The Supreme Court of Texas, in the case of *Republic National Bank of Dallas* v. *Fredericks* (1955), 283 S.W.2d 39, 46, discussed and defined power of appointment and stated:

"Subject to certain restrictions, the common law accords to the individual a right to delegate to another person the power of designating or selecting the takers of his property. The authority thus to control the disposition of the estate of the grantor or testator is referred to as a 'power of appointment.'

\* \* \*

'A power of appointment is a power of disposition given to a person over property not his own, by some one who directs the mode in which that power shall be exercised by a particular instrument. It is an authority to do an act which the owner granting the power might himself lawfully perform.' Thompson on Wills, 3rd Ed., p. 596, Sec. 400." See, also, *Commissioner of Internal Revenue* v. *Walston* (1948), 168 F.2d 211.

An examination of the pertinent parts of the trust created by Laura Long indicates that the power which was given to

Philip Long in Item V C falls under the definition of power of appointment, as set out above. Philip Long may exercise the power which was delegated to him by Laura Long, that being to distribute property not his own. It is obvious that Laura Long would have had the same power to dispose of her property as that given to Philip Long, had Laura Long decided to dispose of her property in such a manner.

A reading of Item V C, *supra*, does not disclose any direct reference to a power of appointment. However, it is not necessary that the actual words "power of appointment" be used in order to create such a power.

In the case of *Estate of Rosecrans* (1971), 4 C. 3d 34, 92 Cal. Rptr. 680, 480 P.2d 296, it was held that no particular form of words is necessary to create a power of appointment. In *In re Kuttler's Estate, supra,* the court said: "No particular form of words is necessary to the creation of such a power." Thompson on Real Property, *supra,* § 2025, states:

> "No particular form or words is necessary for the creation of a power; any expression, however, informal, is sufficient if it clearly indicates an intention to give a power. Where the intention to create the power is plain, it should be given effect. All that is necessary is an indication of a clear intention to accomplish same proper purpose by the donor through the donee. It may be conferred by express words, or may be necessarily implied. . . ."

Appellee contends that the right of withdrawal of Philip Long is a vested property right rather than a power of appointment. However, it is our opinion that such is not the case. This problem was discussed in 62 Am. Jur. 2d, Powers, § 107, p. 206, as follows:

> ". . . Creating a general power of appointment is virtually an offer to the donee of the estate or fund that he may receive or reject at will, and like any other offer to donate property to a person, no title can vest until he accepts the offer, nor can a court of equity compel him to accept the property or fund against his will, even for the benefit of creditors."

The leading case on this issue is *Gilman* v. *Bell* (1881), 99 Ill. 144, 150, 151, wherein the Illinois Supreme Court discussed powers of appointment and vesting as follows:

". . . No title or interest in the thing vests in the donee of the power until he exercises the power. It is virtually an offer to him of the estate or fund, that he may receive or reject at will, and like any other offer to donate property to a person, no title can vest until he accepts the offer, nor can a court of equity compel him to accept the property or fund against his will, even for the benefit of creditors. If it should, it would be to convert the property of the person offering to make the donation to the payment of the debts of another person. Until accepted, the person to whom the offer is made has not, nor can he have, the slightest interest or title to the property. So the donee of the power only receives the naked power to make the property or fund his own. And when he exercises the power, he thereby consents to receive it, and the title thereby vests in him, although it may pass out of him *eo instanti,* to the appointee. . . ." See, also, 59 A.L.R. 1510.

In the case of *Shatluck* v. *Burrage* (1918), 229 Mass. 448, 118 N.E. 889, it was held that:

". . . When a donor gives to another power of appointment over property, the donee of the power does not thereby become the owner of the property. The donee has no title whatever to the property. The power is simply a delegation to the donee of authority to act for the donor in the disposition of the latter's property. . . . The right to exercise the power is not property and cannot be reached by creditors. . . . On no theory of hard fact is the property appointed the property of the donee of the power. . . ."

Contrary to the contention of appellee, it is our opinion that Philip Long has no control over the trust corpus until he exercises his power of appointment and gives notice to the trustee that he wishes to receive his 4% of the trust corpus. Until such an exercise is made, the trustee has the absolute control and benefit of the trust corpus within the terms of the trust instrument.

While not controlling as precedent, we find that the Federal Estate Tax laws are quite analogous to the case at bar. Under

§ 2041, Powers of Appointment, of the Internal Revenue Code, it is clear that the interest given to Philip Long under Item V C would be considered a power of appointment for estate tax purposes. A general power of appointment is defined in § 2041 (B) (1) as follows:

> "(1) General Power of Appointment.—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; . . ."

The regulations pertinent to this issue discuss a power of appointment as it is used for estate tax purposes as follows:

> "(b) Definition of 'power of appointment' (1) In general. The term 'power of appointment' includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. . . ." 20.2041-1 (B) (1)

For estate tax purposes even the failure to exercise a power of appointment may lead to tax consequences. Under § 2041 (B) (2) the lapse of a power of appointment will be considered a release of such power during the calendar year to the extent of the value of the power in question. However, the lapsed power will only be considered a release and includable in the gross estate of a decedent if the value of the lapsed power is greater than $5,000 or 5% of the aggregate value of the assets out of which the lapsed power could have been satisfied.

The trust instrument was obviously carefully drawn with the tax consequences bearing an important place in the overall intent of the testator. The trust as a whole is set up to give the grandchildren of Laura Long the substantial portion of the assets involved. We note with interest that the percentage of corpus which Philip Long may receive is carefully limited to a percentage less than that which would

be includable in the gross estate of Philip Long should he die within a year in which he had allowed his power of appointment to lapse.

It is elementary that courts will seek to ascertain the intention of the testator by giving a full consideration to the entire will. See 29 I.L.E. Wills, § 174. The trust created in the will of Laura Long, in our opinion, has the legal effect of creating a power of appointment in Philip Long under Item V C of the trust.

Philip Long has never exercised his power of appointment under the trust. Such a situation is discussed in II Scott on Trusts, § 147.3 as follows:

". . . Where the power is a special power, a power to appoint only among a group of persons, the power is not beneficial to the donee and cannot, of course, be reached by his creditors. Where the power is a general power, that is, a power to appoint to anyone including the donee himself or his estate, the power is beneficial to the donee. If the donee exercises the power by appointing to a volunteer, the property appointed can be reached by his creditors if his other assets are insufficient for the payment of his debts. But where the donee of a general power created by some person other than himself fails to exercise the power, his creditors cannot acquire the power or compel its exercise, nor can they reach the property covered by the power, unless it is otherwise provided by statute. . . ."

Indiana has no statute which would authorize a creditor to reach property covered by a power of appointment which is unexercised.

In *Gilman* v. *Bell, supra,* the court analyzed the situation where a general power of appointment was unexercised and discussed the position of creditors of the donee of the power as follows:

"But it is insisted, that, conceding it to be a mere naked power of appointment in favor of himself, in favor of creditors he should be compelled by a court of equity to so appoint, or be treated as the owner, and the property subjected to the payment of his debts. The doctrine has been long estab-

lished in the English courts, that the courts of equity will not aid creditors in case there is a non-execution of the power. . . ."

The creditors' rights against an unexercised power of appointment was also discussed in 62 Am. Jur. 2d, Powers, § 107, as follows:

"It is established by the great weight of authority, and may be regarded as settled, that an unexercised general power of appointment does not render the property subject thereto equitable assets of the donee, nor make it liable for his debts or the debts of his estate, although his own property is insufficient to pay them. . . ." See, also, *Quinn* v. *Tuttle* (1962), 104 N.H. 1, 177 A.2 391.

Appellee concedes that if we find that Philip Long had merely an unexercised power of appointment then creditors are in no position to either force the exercise of the power or to reach the trust corpus. Thus, it is clear that the trial court erred when it overruled appellant's motion to set aside the writ of execution.

Having found reversible error on the primary issue, it is unnecessary for this court to discuss other issues raised in this appeal.

Reversed and remanded.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 312 N.E.2d 908.