LINCOLN NATIONAL BANK AND TRUST COMPANY, et al., Appellant as to Issue No. 1, Appellee as to Issue No. 2 Described Below, Plaintiffs,

v.

Patrick J. FIGEL, Charles W. Figel, Terry M. Figel, et al., Appellee as to Issue No. 1, Appellant as to Issue No. 2 Described Below, Defendants.

No. 3–380A74.

Court of Appeals of Indiana,
Fourth District.

Oct. 23, 1981.

Rehearing Denied Nov. 30, 1981.

Carl J. Suedhoff, Jr., Thomas L. Wooding, Hunt, Suedhoff, Borror, Eilbacher & Lee, Fort Wayne, for Lincoln Nat. Bank and Trust Co.

G. William Fishering, III, Adair, Perry, Beers, Mallers & Larmore, Fort Wayne, for Carol D. Fishering.

James Koday, Barrett, Barrett & McNagny, Fort Wayne, for Patrick J. Figel, Charles W. Figel, and Terry M. Figel.

Christopher L. Hagenbush, Sowers & Benson, Fort Wayne, for Charles W. Figel.

CHIPMAN, Presiding Judge.

Lincoln National Bank and Trust Company (Lincoln National) began this cause when it filed a "COMPLAINT TO CONSTRUE WILL" in an attempt to determine how it should distribute the assets contained in a residual testamentary trust set up by Charles A. Spanley. The suit was brought by Lincoln National in its capacity as trustee of Charles' trust and as executor of his daughter, Gloria J. Figel's estate and as the future trustee of her testamentary trust.[1] The "complaint" named Patrick J. Figel, Charles W. Figel, and Terry M. Figel (the grandchildren) and the unborn heirs of Charles and Gloria as defendants along with two other parties not pertinent to this appeal. The trial court adopted the grandchildren's construction of the will clause but agreed with Lincoln National as to how the estate taxes connected with the distribution were to be apportioned.

Lincoln National appeals the court's first decision alleging the court erred in its construction of the section of Charles' will which instructed the trustee how to distribute the trust assets.

The grandchildren appeal the court's tax apportionment arguing the estate taxes should be paid from Gloria's estate and not pro rata from both estates as the court held.

We reverse.

### FACTS

The parties stipulated to the following facts. Charles died on March 2, 1958. His will contained the following paragraph:

"4.06. *When my wife shall no longer be living and my daughter shall have attained the age of thirty-five (35) years, or at any time thereafter upon her request, the Trustee shall distribute and pay over the entire trust estate* excepting the Lyric Theatre Building (hereinafter described and defined) *to my daughter* but if my daughter shall die before attaining age thirty-five (35), then at the death of the survivor of my wife and daughter the Trustee shall distribute the entire trust estate to or hold the same for such spouse, issue, spouses of issue, and widows or widowers of deceased issue of my daughter as my daughter shall by will appoint. In the exercise of such power of appointment, my daughter may appoint life estates to one or more objects of the power with remainders to others, may impose lawful conditions upon any appointment, provided that a condition shall not cause the appointment to benefit any person not within the foregoing classes of objects of the power, may impose lawful spendthrift restrictions upon any appointment, and may make appointments outright or in trust for any object within the foregoing classes of objects. To the extent that the entire trust estate is not effectively appointed by such power of appointment the same shall be distributed per stirpes among the then living issue of my daughter but if any such issue shall not have attained the age of twenty-one (21) years, then the share of the trust estate which would have been distributed to such minor issue shall be held in trust

---

1. In essence the "complaint" is tantamount to a request for a declaratory judgment provided for by Ind.Code 34–4–10–1 et seq. In the "complaint" Lincoln National prays that the court adopt its construction of the section of the will in dispute.

by the Trustee for the benefit of such issue until such issue attains the age of twenty-one (21) years. If no such valid power of appointment is exercised and if there is then living no issue of my daughter then the entire trust estate shall be divided as follows: one-half (½) to my niece, Virginia Cler, now living near Fort Wayne, Indiana, or if she be then dead among her issue, per stirpes, and the other one-half (½) to my niece, Lila Lee Haley, now living in Toledo, Ohio, or if she be then dead, among her issue, per stirpes." (emphasis added)

On February 18, 1977, Charles' wife, Mildred, died. His daughter, Gloria, was over the age of 35 on that date. Gloria died on December 31, 1977, without requesting the trust estate from the trustee and before any of it was distributed. Her will also contained a residual testamentary trust and it named Lincoln National as executor and trustee.

Her executor and the grandchildren disagreed as to the construction of section 4.06 quoted above. The executor argues Gloria's interest in the trust estate vested in her upon her mother's death since Gloria had attained the age of 35 at that time. It interprets the phrase "or at any time thereafter upon her request" to mean she can request possession of the trust estate at any time and not to mean that she would have to specifically request distribution of the trust before her interest vested. Accordingly, since the trust estate vested in her upon her mother's death, the executor argues, the assets of Charles' trust should be included in Gloria's estate and distributed through her testamentary trust.

The grandchildren contend section 4.06 gave Gloria a power of appointment which she failed to exercise prior to her death. Therefore, they argue, under section 4.06, the trust estate should be distributed to them upon reaching 21 years of age.

Lincoln National petitioned the court to appoint a guardian for the unborn great-grandchildren of Charles since they were potential beneficiaries of Charles' trust de-

pending on how the court construed section 4.06. Carl J. Suedhoff, attorney for Lincoln National, was appointed their guardian.

With regard to the tax apportionment dispute, the court was asked to decide, based on clauses in Charles' and Gloria's respective wills, whether the federal estate taxes attributable to the passing of the trust assets were to be paid from Charles' or Gloria's trust.[2]

## I. DISTRIBUTION OF THE ASSETS

As executor of Gloria's estate Lincoln National has standing to bring this suit under Ind.Code 29–1–13–3 which provides that:

"Every personal representative shall have full power to maintain any suit in any court of competent jurisdiction, in his name as such personal representative, for any demand of whatever nature due the decedent or his estate or for the recovery of possession of any property of the estate or for trespass or waste committed on the estate of the decedent in his lifetime, or while in the possession of the personal representative; but he shall not be liable, in his individual capacity, for any costs in such suit, and shall have power, at his option, to examine the opposite party under oath, touching such demand."

See also Holland v. Holland, (1891) 131 Ind. 196, 30 N.E. 1075; Baker v. State Bank of Akron, (1942) 112 Ind.App. 612, 44 N.E.2d 257.

Our primary consideration when construing a will is to ascertain and give effect to the intent of the testator. We will consider the entire will in an effort to best obtain this objective. Ross v. Clore, (1948) 225 Ind. 597, 76 N.E.2d 839; Spence v. Second National Bank of Richmond, (1955) 126 Ind. App. 125, 130 N.E.2d 667.

As stated earlier the dispute involves the construction of section 4.06 of Charles' will. In that clause Charles requests that:

---

**2.** This issue was important because the two trusts had different ultimate beneficiaries.

"When my wife shall no longer be living and my daughter shall have attained the age of thirty-five (35) years, or at any time thereafter upon her request, the Trustee shall distribute and pay over the entire trust estate . . . to my daughter . . . ."

The issue is whether this clause gave Gloria a vested interest in the trust assets upon her mother's death and her attaining age 35 or whether it gave her a vested power of appointment. Based on the language used and some common law preferences, we believe she had a vested interest in the trust estate.

In construing section 4.06 we first focus on the language used by the testator. We believe this section would have been worded differently if a power of appointment was intended. The word "or" in the phrase "or at any time thereafter" places that phrase in a disjunctive state implying two possible times of distribution rather than two possible times of vesting of the trust estate in Gloria. If Charles had meant to give her a power of appointment it seems logical the phrase would have read, "and at any time upon her request." Second, the trustee is instructed to "distribute and pay over the *entire* trust estate." This phrase also implies vesting of the estate in Gloria rather than vesting of a power of appointment since it apparently leaves Gloria no options as to exercising her power of appointment as to anything less than the entire estate. Third, the trustee even when requested, is instructed by section 4.06 "to pay over the entire trust estate . . . to my daughter," Gloria. We do not see how this section can be construed as a power of appointment when under its wording, if the power is used, i. e., a request is given to the trustee, the latter is to pay the entire estate to Gloria, irrespective of whom the appointed donee is. If this section was meant to set up a power of appointment, that phrase would most probably read, "and pay over any amount of the trust estate . . . to my daughter or anyone she appoints." Fourth, further down in section 4.06, after referring to her testamentary power of appointment, the section refers back to "such *power* of appointment." The word "power" being singular implies Charles did not also give Gloria an inter vivos power of appointment in addition to her testamentary power. Lastly, Charles used the words "power of appointment" in sections 4.06, 4.07 and 4.08. If Charles intended to give Gloria an inter vivos power of appointment we believe he would have specifically said so.

In its Appellant's Brief, Lincoln National cites several common law maxims that are not directly on point with the facts in this case but we still find them helpful in deciding this case.

In *Amos v. Amos*, 117 Ind. 37, 19 N.E. 543, it is said: "We affirm as an established principle that the law not only favors the vesting of remainders, but it also presumes that the words postponing the estate relate to the beginning of the enjoyment of the remainder, and not to the vesting of that estate." In *Bruce v. Bissell*, 119 Ind. 525, 22 N.E. 4, this language is used: "It is familiar law that, in the absence of a clear manifestation of the intention of the testator to the contrary, estates shall be held to vest at the earliest period. The intent to postpone the vesting of the estate must be clear and manifest, and must not arise by mere inference or construction. It is likewise well settled that 'the law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested. *Doe v. Considine*, 6 Wall. 458–475; *Amos v. Amos*, 117 Ind. 19, 19 N.E. 539; *Amos v. Amos*, 117 Ind. 37, 19 N.E. 543; *Harris v. Carpenter*, 109 Ind. 540, 10 N.E. 422; *Hoover v. Hoover*, 116 Ind. 498, 19 N.E. 468, and cases cited. (citations omitted)

*Heilman v. Heilman*, (1891) 129 Ind. 59, 28 N.E. 310, 311; *Aldred v. Sylvester*, (1916) 184 Ind. 542, 111 N.E. 914; *Burrell v. Jean*, (1925) 196 Ind. 187, 146 N.E. 754. When dealing with future estates words of postponement are interpreted as relating to the beginning of the enjoyment, and not to the vesting of the estate. *In re Carney's Es-*

tate, (1908) 171 Ind. 379, 86 N.E. 400; *Al-dred v. Sylvester, supra.*

Applying these holdings to section 4.06 we construe the opening sentence to mean Gloria had a vested interest in the trust upon her mother's death since Gloria was over 35 at the time and that she need only request distribution from the trustee to obtain possession of her vested property.

In making their argument that Charles intended to give Gloria a power of appointment, the grandchildren rely heavily on *Irwin Union Bank and Trust Company v. Long*, (1974) 160 Ind.App. 509, 312 N.E.2d 908. In that case this court found the following language gave Philip Long a power of appointment:

> "When Philip W. Long, Jr. has attained the age of twenty-one (21) years and is not a full-time student at an educational institution as a candidate for a Bachelor of Arts or Bachelor of Sciences degree, Philip W. Long shall have the right to withdraw from principal once in any calendar year upon thirty (30) days written notice to the Trustee up to four percent (4%) of the market value of the entire trust principal . . . ."

Relying on that holding the grandchildren argue Gloria was only given a power of appointment since "common sense dictates that the facts of *Irwin Union Bank and Trust Company* and the Spanley matter are essentially one and the same." We disagree.

The *Irwin Union* clause does not contain the all important disjunctive "or" which section 4.06 contains and the type and timing of Philip Long's requests for money, which limitations are not found in section 4.06, certainly imply a power of appointment in Philip was intended.

Additionally, the grandchildren argue that based on the definition of power of appointment used by this court in *Irwin Union* we must conclude Gloria was given a power of appointment. Quoting *Thompson on Wills*, 3rd Ed., p. 596, Sec. 400, *Irwin Union* defined a power of appointment as "a power of disposition given to a person *over property not his own*, by someone who

directs the mode in which that power shall be exercised by a particular instrument." (emphasis added) *Id.*, at 912. The grandchildren contend if we apply this definition to the language of section 4.06 we will find Gloria's right of withdrawal was a power of appointment. What they fail to realize though is before we can apply this definition we will have to assume Gloria did not have a vested interest in the trust assets. Since that is the dispositive issue in this case we can hardly make that assumption.

The judgment of the trial court on this issue is reversed and this case is remanded with instructions to enter judgment in favor of Lincoln National.

## II. THE ESTATE TAXES

In light of our decision above we do not feel compelled to decide this issue since it now will be of no consequence. Had we affirmed the trial court's distribution of Charles' trust, the estate taxes on that distribution would have been paid by one of two sources, each with different ultimate beneficiaries, i. e., Charles' trust or Gloria's trust. Since the tax liability is already established and will not change based on who pays it, and since under our decision all of Charles' and Gloria's residual assets will be in her trust, the taxes will be paid from her trust without any parties suffering adversely.

The judgment of the trial court is reversed.

MILLER and YOUNG, JJ., concur.